146        83
25 SC ²493ı

# COMMONWEALTH v. SARAH A. RANDOLPH.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SES-
SIONS OF LAWRENCE COUNTY.

Argued October 13, 1891—Decided January 4, 1892.
[To be reported.]

1. The solicitation to commit murder, accompanied by the offer of money
as a reward for so doing, is an offence at common law: Stabler v. Com-
monwealth, 95 Pa. 318, followed; Smith v. Commonwealth, 54 Pa. 209,
commented on and distinguished, as deciding merely that solicitation
to commit a misdemeanor is not indictable by the common law.

2. The test whether or not a certain act is a crime at common law, is, not
whether precedents for so treating it can be found in the books, but
whether it injuriously affects the public police and economy: Com-
monwealth v. McHale, 97 Pa. 397. Solicitation and offer of money to
commit murder, meet this test, constituting an act done, a step in the
direction of that crime.

Before Paxson, C. J., Sterrett, Green, Clark, Wil-
liams, McCollum and Mitchell, JJ.

No. 264 October Term 1891, Sup. Ct.; court below, No. 1
September Term 1890, Q. S.

On September 3, 1890, the grand jury returned as a true bill
an indictment of Sarah A. McGinty, alias Sarah A. Randolph, for
solicitation to commit murder. The first count charged, in
substance, that the defendant, on May 24, 1890, with force and
arms, etc., unlawfully, wickedly and maliciously did solicit and
invite one Samuel Kissinger, and by the offer and promise to
pay to the said Samuel Kissinger the sum of one thousand dol-
lars, did incite and encourage him, the said Samuel Kissinger,
one William S. Foltz, a citizen of the county of Lawrence, in
the peace of the commonwealth, feloniously to kill, murder and
slay, contrary to the form, etc. The second count made a sim-
ilar charge, except that it omitted the averment of the offer of
one thousand dollars, as specified in the first count. The third
count was identical with the first, except that it stated the sub-
ject of the solicitation to be the murder of some person unknown.

Having by leave of the court withdrawn a plea of nolo con-

Opinion of Court below.

tendere, the defendant moved to quash the indictment for the reasons:

1. The said indictment does not in any count thereof charge any offence either at common law or by statute.

2. The third count contains charges not made before the committing magistrate, or included in the complaint returned by the committing magistrate, which complaint is the foundation of the indictment.

By the court: This motion presented, and it is overruled, the defendant to have the right to set up all or any of the matters stated in it in a motion in arrest of judgment; exception.[1]

The defendant then put in a plea of not guilty, and on September 8, 1890, the indictment was tried, resulting in a verdict of guilty as indicted in the first count. Thereupon, the defendant moved the court for a new trial and in arrest of judgment, for the reason that the first count of the indictment charged no indictable offence, either at common law or by statute.

After argument, the court, McMichael, J., on January 19, 1891, filed an opinion, which, after disposing of the motion for a new trial, proceeded:

The defendant was found guilty as charged in the first count of the indictment. In that count, it is charged that the defendant, Sarah A. McGinty, " did solicit and invite one Samuel Kissinger . . . . . and by the offer and promise of payment to said Samuel Kissinger of a large sum of money, to wit, one thousand dollars, which to him, the said Samuel Kissinger, she the said Sarah A. McGinty, then and there, did propose, offer, promise and agree to pay, did incite and encourage him, the said Samuel Kissinger, one William S. Foltz . . . . . feloniously to kill, murder and slay." . . . . .

I have before copied the important averments in the first count in the indictment. The jury has found these averments to be true. Our present question is, do they charge a crime ?

The case of Rex v. Higgins, 2 East 5, was decided by the Court of King's Bench in 1801. In that case, the indictment charged that the defendant " did falsely, unlawfully and wickedly solicit and incite one James Dixon, a servant of J. Phillips, to take, embezzle and steal a quantity of twist, of the value of

Opinion of Court below.

three shillings, of the goods and chattels of his master, J. Phillips." It was not charged, nor was it any part of the case, that James Dixon had committed, or attempted to commit the larceny which the defendant had solicited him to commit. The court decided that an indictable misdemeanor was charged in the indictment, and that the crime charged had such a tendency to a breach of the peace that it was triable in the Court of Quarter Sessions. From the report of the case, it appears that it was very fully argued and very carefully considered. Since its decision it appears to have been regarded by the courts, and by the writers of text books on criminal law as the leading case on this question. In England, it was followed by a number of cases involving the same principle, and in all of them it was determined the same way.

In Rex v. Phillips, 6 East 464, it was held that an endeavor to incite another to send a challenge to fight a duel, was a misdemeanor. In Rex v. Hickman, 1 Mood. 34, it was decided that to solicit or make overtures to another to commit sodomy was a crime; but to threaten to accuse another of having made such overtures, was not a threat to charge him with having committed the crime of sodomy under the English statute. In Rex v. Quail, 4 F. & F. 1076, almost the precise question decided in Rex v. Higgins, was again presented, and the court decided that " to incite a servant to rob his master is a misdemeanor at common law." In Rex v. Gregory, 10 Cox C. C. 459, it was determined that "soliciting and inciting a person to commit an offence, where no other act is done except the soliciting and inciting, is a misdemeanor only," and not a felony. There are other English cases which I find cited in the books, as authorities for this same position, but I do not have access to any report of them. In 1 Russell on Crimes, 967, it is stated that to solicit, encourage or endeavor to persuade another person to commit the crime of murder, is a misdemeanor at common law, and Rex v. Higgins is cited as authority for this position. These authorities, without any to the contrary, are sufficient to show that in England it is an indictable misdemeanor at common law, to solicit or incite another to commit a felony, whatever may be said on the question whether it is a misdemeanor to solicit or incite another to commit a misdemeanor.

I have not found any decision or authority in the United

Opinion of Court below.

States which is not in harmony with this principle deduced from the English decisions, unless the argument of Mr. Wharton, in § 179 of his ninth edition on Criminal Law, and for which he cites no decision, may be considered such adverse authority. In State v. Avery, 7 Conn. 266, Rex v. Higgins was cited as authority by the court, and it was decided that to solicit a woman to commit adultery was a misdemeanor, adultery being a felony in that state. There is a criticism made on this case, that the information was for libel, and the question of solicitation was not directly before the court. This criticism does not appear to be well founded. The first sentence in Justice PETERS' opinion is, " Whether the facts stated in this information are a libel, or a solicitation to commit a greater crime it is not now material to inquire." Further on he says, " Admitting that the letter in question is not a libel, it is certainly a solicitation to commit a greater crime," viz., adultery. " A solicitation of another to commit such a crime must be at least a high crime and misdemeanor." It will thus be seen that the question of the criminality of the solicitation was directly decided by the court.

Bishop on Criminal Law, vol. 1, § 689, 3d ed., says: " A common form of attempt is the soliciting of another to commit a crime ; the act, which is a necessary ingredient in every offence, consisting in the solicitation. Thus, to incite a servant to steal his master's goods, or other person to undertake a larceny ; to make overtures to one to commit sodomy, or adultery, where adultery is a statutory felony ; . . . . are severally indictable misdemeanors, though the person approached declines the persuasion." For this statement he cites some of the authorities to which I have already referred. In the last edition of his work he is more emphatic. In § 768 he says : " The law as adjudged holds and has held from the beginning, in all this class of cases, an indictment sufficient which simply charges that the defendant at the time and place mentioned, 'falsely, wickedly and unlawfully did solicit and incite ' a person named to commit the substantive offence, without any further specification of overt acts. It is in vain, then, to say that mere solicitation, the mere entire thing which need be averred against a defendant as the ground for his conviction, is no offence." This is strong language, and was written as a criticism on Mr. Wharton's position which is now to be noticed.

Opinion of Court below.

Mr. Wharton, Criminal Law, § 179, 9th ed., thus asks and answers the question: " Are solicitations to commit crime independently indictable? They certainly are, as has been seen, when they in themselves involve a breach of the public peace, as is the case with challenges to fight and seditious addresses. They are also indictable when their object is interference with public justice; as where a resistance to the execution of a judicial writ is counseled, or perjury is advised; or the escape of a prisoner is encouraged; or the corruption of a public officer is sought. . . . . They are indictable, also, when they are in themselves offences against public decency, as is the case with solicitations to commit sodomy. . . . . And the better opinion is, that, where the solicitation is not in itself a substantive offence, or where there has been no progress made towards the consummation of the independent offence attempted, the question whether the solicitation is by itself the subject of penal prosecution must be answered in the negative." Then the learned author covers two pages with an argument to support this position.

I confess I do not understand him when he speaks of solicitations which " themselves involve a breach of the public peace." He must mean " a solicitation which tends to a breach of the peace." A mere solicitation cannot involve a breach of the peace. A solicitation to commit murder is a solicitation to do an act which if done would be a breach of the public peace. Mr. Wharton says a solicitation to commit sodomy is indictable, because in itself it is an offence against public decency. In the same section, he says that solicitations to commit incest are not indictable. At what point in libidinous crimes does he draw the line of " public decency?" He begs the whole question, however, when he says that a solicitation is indictable only when it is a substantive offence. If it is indictable, then it is a substantive offence. If it is a substantive offence, then it is indictable. We can learn nothing from this argument based on the idea of substantive offences.

We have, however, learned from the examination of the authorities already made, that there are crimes which it is a misdemeanor at common law to solicit a person to commit. All the authorities noticed, including Mr. Wharton, agree on that. The only difficulty is to determine just what crimes, or what

class of crimes, it is criminal to solicit or incite another to commit. And our present inquiry is, is murder one of them? It is a felony. It comes within the principle decided in Rex v. Higgins and the other English cases cited; also, within the principle on which State v. Avery was decided. Russell, in his work on Crimes, says it is within the rule. It is within the rule as given by Bishop on Criminal Law. It is within the rule as given in Wharton's Criminal Law, if it involve—that is, as we have seen—tend to a breach of the public peace; and it needs no argument to prove that to commit murder is to break the peace, particularly if it be committed by direct personal violence. There are but few crimes, if any, which disturb the peace and quiet of a community more than the crime of murder, no matter how it be committed. ·

Looking at the subject from the standpoint of reason rather than that of authority, it is difficult to see why a solicitation to fight, to resist an officer, to resist legal process, or to break prison should be punished criminally, and a solicitation to commit murder should not be so punished.

The learned counsel for the defendant, apparently convinced that the weight of authority, outside of Pennsylvania, was against his client, very ingeniously tried to avoid it, on the ground that these authorities do not contain the law as it is administered in Pennsylvania. The case of Smith v. Commonwealth, 54 Pa. 209, is cited as in effect overruling Rex v. Higgins, and perforce overruling all the other cases of like character. But, to reach this conclusion, much more is claimed for Smith v. Commonwealth than was decided in it. In that case, the indictment charged that the defendant "intending to vitiate and corrupt the morals of one Rachel Dorman," a married woman, "did wickedly and unlawfully solicit and incite and endeavor to persuade" her to commit adultery. A motion was made in arrest of judgment, and the Supreme Court decided that judgment should be arrested, because the indictment did not charge a crime. That is the full scope of the decision. Rex v. Higgins was commented on by Chief Justice WOOD-WARD, in the opinion of the Court. He does vigorously combat the conclusion which GROSE, J., reached in Rex v. Higgins, to the effect that inciting another to commit a misdemeanor is itself a misdemeanor. His criticisms will not all be found to

be fully justified, when the opinions of all four of the judges of the King's Bench, and the authorities they cited to support those opinions are fully and carefully examined. But it can do no good to review those criticisms now. Chief Justice WOODWARD did not say that Rex v. Higgins is not law. His case did not require him to say that, but only to say that the argument of Justice GROSE, which in one of its steps reached the conclusion that "inciting another to commit a misdemeanor is itself a misdemeanor" was not law. On the contrary, he says, "This case was an unsuccessful solicitation to commit a felony, and is authority for nothing more than that such solicitation is indictable as a misdemeanor." After commenting on the authorities cited, he adds, "These are the cases upon which Higgins' case was ruled, and no doubt they were ample authority for the point ruled there, but do they sustain or tend to sustain the obiter dictum, that merely inciting another to commit a misdemeanor is indictable?" That is not saying that Rex v. Higgins is not good law. Still further, and showing that Judge WOODWARD was drawing a clear distinction between felonies and misdemeanors, in cases of this kind, he says, when speaking of the State v. Avery, 7 Conn. 267: "By the Connecticut statute adultery is a felony. That case, then, in principle was the Higgins case over again, and is distinguishable from the solicitation charged here, which was not to commit a felony."

But, argues the learned counsel for the defendant, Smith v. Commonwealth, supported as it is by Lamb v. State, 8 Cent. R. 877, decides that "a solicitation to commit a misdemeanor is not itself a misdemeanor;" and then takes the position that by our various statutes providing punishments for crimes, all distinctions between felonies and misdemeanors have been abolished in Pennsylvania; and hence it is not a crime to solicit another to commit what at common law was a felony.

It is stating the case much too broadly to say that all distinction between common-law felonies and common-law misdemeanors have been abolished in Pennsylvania. Let it be conceded that the forfeiture of land was the particular incident or punishment which gave the name "felony" to certain crimes, and that that particular punishment no longer exists; then the incident which gave the name to these crimes no longer exists.

But that is not the only thing which distinguished and still distinguishes these classes of crimes from each other. A felon could rightly be arrested by any citizen without a warrant. If he resisted arrest, or was escaping so as to make it necessary to kill him in order to take him, such killing was excusable homicide. There are accessories before and after the fact in felonies. There are none in misdemeanors. There are incidents in the trials of many felonies, such as arraignment, challenging of jurors, etc,, which do not belong to misdemeanors. The two classes of crimes are kept prominently distinct in our criminal code and in all our criminal legislation. The fact that with us, now, some misdemeanors are punishable as severely as some felonies, is perhaps the only fact on which to base the assertion that all distinctions between the two classes of crimes are abolished. In the face of all the other facts to the contrary, this is not enough to sustain the conclusion. Then, the argument that, because solicitation to commit a misdemeanor is not a crime, therefore, solicitation to commit murder, which is a felony, is no crime, entirely fails.

But if it were conceded that the distinctions between the two classes of crimes do not now exist, still the conclusion sought, could not be reached. It would not follow that all crimes are now to be treated as misdemeanors, any more than it would follow that they are all to be treated as felonies. If soliciting another to commit murder was ever a crime at common law, then it is a crime yet, and will continue to be such until it is expressly abolished by statute. The very authority on which the counsel bases his whole argument, viz., Smith v. Commonwealth, clearly recognizes, as we have seen, the distinction which the counsel seek to obliterate, and decides the case on the fact that that distinction does exist.

The case of Stabler v. Commonwealth, 95 Pa. 318, must be cited as in harmony with the conclusion we have reached. There it was decided that "the mere delivery of poison to a person, and soliciting him to place it in the spring of a certain party, is not an *attempt* to administer poison, within the meaning of the eighty-second section of the act of March 31, 1860." That was the only question directly before the court in that case. But the court say that the defendant was rightly convicted under the sixth count in the indictment. That count

charged that he "did falsely and wickedly solicit and invite one John Neyer to administer a certain poison and noxious and dangerous substance, commonly called Paris green, to said Richard F. Waring," etc. It is said that the sufficiency of this sixth count was not before the court. That is true. But the fact that the able attorneys for the defendant did not complain of this count, is some evidence that they thought it was valid. And the dictum of the court is strong evidence that the judges think that to solicit a person to commit murder is an indictable offence.

The motion for a new trial and the motion to arrest the judgment are both overruled.[2]

—The defendant was then sentenced to pay the costs of prosecution, a fine of one dollar to the commonwealth, and to undergo an imprisonment for twenty months in the Allegheny County Workhouse.[3] Thereupon, having obtained a special allowance, the defendant took this appeal, specifying that the court erred:

1. In overruling the motion to quash.[1]

2. In overruling the motion in arrest of judgment.[2]

3. "In sentencing defendant to the Allegheny Workhouse."[3]

*Mr. B. A. Winternitz* (with him *Mr. John G. McConahy*), for the appellant:

1. The court below proceeded upon the mistaken idea that at common law solicitation to commit a felony was indictable. The term common law in Pennsylvania means the common law of England, as it existed at the time of our severance from the British crown: 1 Bishop Cr. L., § 455; § 2, act of January 28, 1777, 1 Sm. L. 429. The common law consists of a body of reported cases, called precedents; and if no precedent can be found to support, either directly or by conclusive legal implication, a doctrine contended for as part of the common law, that fact is plenary proof that such doctrine does not exist. We affirm that there is no reported case prior to the American revolution holding that solicitation to commit a felony is an indictable offence. But the court below relied on Rex v. Higgins, 2 East 5, which holds that an unsuccessful solicitation of a servant to steal his master's goods is a misdemeanor.

2. As Rex v. Higgins was not decided until 1801, we may

dismiss it as an authority, and turn our attention to the reasoning on which it is based. The decision in that case was put upon two grounds: (*a*) that solicitation is an overt act, no argument in support of this, however, being attempted by any of the judges; and (*b*) that prior decisions had held it a misdemeanor to solicit or incite another to commit a misdemeanor, and "a fortiori, it must be such to incite another to commit a felony." The cases thus referred to were examined in Smith v. Commonwealth, 54 Pa. 209, and it was shown that not one of them was authority for the position taken by the English judges; they were all cases of attempt, not one being a case of mere solicitation. The court below cites, also, four subsequent English cases. Two of them, Reg. v. Quail, 4 F. & F. 1076, and Reg. v. Gregory, 10 Cox C. C. 459, were decided simply upon the authority of Rex v. Higgins. The other two, Rex v. Philipps, 6 East 464, and Rex v. Hickman, 1 Mood. 34, were rested on different grounds.

3. Why should there be a distinction between solicitation to commit a misdemeanor, and solicitation to commit a felony, in Pennsylvania? The difference between felonies and misdemeanors, if any exists, is more superficial than real. When the punishment of offences ceased to be forfeiture, the distinction between them was obliterated; or, if it existed at all, it was purely technical and artificial. In Pennsylvania, the word felony has no fixed and definite meaning and is incapable of definition. Many misdemeanors are punished more severely than some felonies. There is some conflict of judicial opinion, outside this state, as to the indictability of solicitations to commit crime, but the tendency of modern thought, and the current of authority in this country is to hold indictable only such acts as are in themselves substantive offences, or are physical attempts to commit such: Smith v. Commonwealth, 54 Pa. 209; 1 Whart. Cr. L., §§ 174, 179; Hicks v. Commonwealth, 86 Va. 223; Rex v. Meredith, 5 C. & P. 89; Yoes v. State, 9 Ark. 42; Reg. v. Taylor, 1 F. & F. 512; Commonwealth v. Jacobs, 9 Allen 274; 2 Bish. Cr. L. 435, 728; Kelly v. Commonwealth, 1 Gr. 488; Commonwealth v. Jones, 10 Phila. 211; Lamb v. State, 66 Md. 285; People v. Murray, 14 Cal. 159; Cox v. People, 82 Ill. 191. The remarks of the court in Stabler v. Commonwealth, 95 Pa. 318, were pure dictum.

Opinion of the Court.

*Mr. D. B. Kurtz* (with him *Mr. A. L. Porter*, District Attorney, *Mr. Malcolm McConnell* and *Mr. L. T. Kurtz*), for the Commonwealth:

Our own courts and others have held that a mere solicitation to commit a misdemeanor, is not itself a misdemeanor, but solicitation to commit a felony is indictable: Rex v. Higgins, 2 East 5; 1 Russell on Crimes, 82, 967; 1 Archb. Cr. Pr. & Pl., 19; 1 Chitty Cr. L., 264; 1 Bish. Cr. L., §§ 689, 768; 1 Whart. Cr. L., § 179. As to what is to be understood by a crime at common law, see: 1 Whart. Cr. L., §§ 14–16; Commonwealth v. McHale, 97 Pa. 397; James v. Commonwealth, 12 S. & R. 220; Commonwealth v. Mohn, 52 Pa. 243. While our own cases do not directly rule the question raised in the present case, they do recognize the principle we contend for: Smith v. Commonwealth, 54 Pa. 209; Stabler v. Commonwealth, 95 Pa. 318.

PER CURIAM:

The appellant was convicted in the court below upon an indictment in the first count of which it was charged that she, "Sarah A. McGinty, alias Sarah A. Randolph, . . . . unlawfully, wickedly, and maliciously did solicit and invite one Samuel Kissinger, then and there being, and by the offer and promise of payment to said Samuel Kissinger of a large sum of money, to wit, one thousand dollars, which to him, the said Samuel Kissinger, she, the said Sarah A. McGinty, alias Sarah A. Randolph, then and there did propose, offer, promise, and agree to pay, did incite and encourage him, the said Samuel Kissinger, one William S. Foltz, a citizen of said county, in the peace of said commonwealth, feloniously to kill, murder, and slay, contrary to the form of the act of general assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania." Upon the trial below, the defendant moved to quash the indictment upon the ground that "the said indictment does not charge in any count thereof any offence, either at common law or by statute." The court below refused to quash the indictment, and this ruling, with the refusal of the court to arrest the judgment, is assigned as error.

It may be conceded that there is no statute which meets this case, and if the crime charged is not an offence at common law, the judgment must be reversed.

Opinion of the Court.

What is a common-law offence? We endeavored to answer this question in Commonwealth v. McHale, 97 Pa. 397, 410, in which we held that offences against the purity and fairness of elections were crimes at common law, and indictable as such. We there said: " We are of opinion that all such crimes as especially affect public society are indictable at common law. The test is, not whether precedents can be found in the books, but whether they injuriously affect the public police and' economy." Tested by this rule, we have no doubt that the solicitation to commit murder, accompanied by the offer of money for that purpose, is an offence at common law.

It may be conceded that the mere intent to commit a crime, where such intent is undisclosed and nothing done in pursuance of it, is not the subject of an indictment. But there was something more than an undisclosed intent in this case. There was the direct solicitation to commit a murder, and an offer of money as a reward for its commission. This was an act done, a step in the direction of the crime; and, had the act been perpetrated, the defendant would have been liable to punishment as an accessary to the murder. It needs no argument to show that such an act affects the public police and economy in a serious manner.

Authorities in this state are very meagre. Smith v. Commonwealth, 54 Pa. 209, decided that solicitation to commit fornication and adultery is not indictable. But fornication and adultery are mere misdemeanors by our law, whereas murder is a capital felony. Stabler v. Commonwealth, 95 Pa. 318, decided that the mere delivery of poison to a person, and soliciting him to place it in the spring of a certain party, is not " an attempt to administer poison," within the meaning of the eighty-second section of the act of March 31, 1860, P. L. 403. In that case, however, the sixth count of the indictment charged that the defendant did " falsely and wickedly solicit and invite one John Neyer, a servant of the said Richard S. Waring to administer a certain poison and noxious and dangerous substance, commonly called Paris green, to the said Richard F. Waring, and divers other persons whose names are to the said inquest unknown, of the family of the said Richard F. Waring," etc. The defendant was convicted upon this count, and, while the judgment was reversed upon the first count, charging " an attempt to admin-

ister poison," we sustained the conviction upon the sixth count, MERCUR, J., saying: " The conduct of the plaintiff in error, as testified to by the witness, undoubtedly shows an offence for which an indictment will lie without any further act having been committed. He was rightly convicted, therefore, on the sixth count."

The authorities in England are very full upon this point. The leading case is Rex v. Higgins, 2 East 5. It is very similar to the case at bar, and it was squarely held that solicitation to commit a felony is a misdemeanor and indictable at common law. In that case it was said by Lord KENYON, C. J.: " But it is argued that a mere intent to commit evil is not indictable without an act done ; but is there not an act done, when it is charged that the defendant solicited another to commit a felony? The solicitation is an act; and the answer given at the bar is decisive that it would be sufficient to constitute an overt act of high treason." We are not unmindful of the criticism of this case by Chief Justice WOODWARD, in Smith v. Commonwealth, supra, but we do not think it affects the authority of that case. The point involved in Rex v. Higgins was not before the court in Smith v. Commonwealth, and could not have been and was not decided. It is true, this is made a statutory offence by statute 24 & 25 Vict. ; but, as is said by Mr. Russell in his work on Crimes, vol. I., p. 967, in commenting on this act : " As all the crimes specified in this clause appear to be misdemeanors at common law, the effect of this clause is merely to alter the punishment of them." In other words, that statute is merely declaratory of the common law.

Our best text books sustain the doctrine of Rex v. Higgins. "If the crime solicited to be committed be not perpetrated, then the adviser can only be indicted for a misdemeanor: " 1 Chit. Crim. L., 264. See, also, 1 Archb. Crim. Pr. & Pl., 19, and 1 Bish. Crim. L., § 768, where the learned author says : " The law as adjudged holds, and has held from the beginning in all this class of cases, an indictment sufficient which simply charges that the defendant, at the time and place mentioned, falsely, wickedly, and unlawfully did solicit and incite a person named to commit the substantive offence, without any further specification of overt acts. It is vain, then, to say that mere solicitation, the mere entire thing which need be averred

against a defendant as the ground for his conviction, is no offence."

We are of opinion the appellant was properly convicted, and the judgment is

Affirmed.