RUDOLPH, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 29—April 17, 1906.*

*Attempt to commit felony: Soliciting bribe: Overt acts: Immunity from prosecution: Testimony before grand jury: Criminating facts: Privilege of witness.*

1. The unsuccessful soliciting by a public officer of a bribe to influence his official action is an offense under ch. 34, Laws of 1901, providing that "any person who shall advise the commission of or attempt to commit any felony . . . that shall fail in being committed," shall be punished, etc.

2. Where, just before a committee of a city council was to pass upon a claim, a member of such committee asked the claimant for a certain sum of money as a condition of voting for allowance of the claim, and urged the claimant to pay said sum and an additional sum to other committee members, and offered to secure favorable action on the claim if such demands were granted, these were overt acts done in furtherance of a criminal design, sufficient to justify conviction of an attempt to commit a felony.

3. Testimony of an alderman before the grand jury that he knew of no bribery or crookedness in public affairs, does not entitle him (under sec. 4098, Stats. 1898, as amended by ch. 85, Laws of 1901) to immunity from prosecution for soliciting a bribe while such alderman.

4. Testimony of an alderman before the grand jury that at a certain time he was such alderman was not testimony of a criminating fact coming within the constitutional privilege as to self-crimination, and does not entitle the witness to immunity from prosecution for soliciting a bribe to influence his official action while such alderman.

ERROR to review a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The plaintiff in error, hereinafter referred to as the defendant, was indicted, being charged with the offense of having solicited a bribe, tried before a jury in circuit court, and found guilty. The indictment charges:

"That on the 19th day of April, A. D. 1901, at said county of Milwaukee, the city of Milwaukee was a municipal corporation duly organized and existing under and by virtue of the laws of the state of Wisconsin, and located in said county of Milwaukee, in the state of Wisconsin; that one *Robert L. Rudolph* then and there was a duly elected, qualified, and acting officer of said city of Milwaukee, to wit, a duly elected, qualified, and acting alderman of the Eleventh ward of said city of Milwaukee and member of the common council thereof; that a certain claim of one Charles H. Hamilton against said city of Milwaukee for the sum of sixteen hundred twenty-five ($1,625) dollars, for professional services alleged therein to have been theretofore duly rendered by said Charles H. Hamilton, as an attorney at law, for said city of Milwaukee (he, the said Charles H. Hamilton, being then and there and theretofore and during all the times when said services were alleged to have been rendered as aforesaid, a duly licensed attorney at law, duly admitted to practice as an attorney at law in all of the courts of the state of Wisconsin), was then and there duly pending before said common council of said city of Milwaukee and before the committee on judiciary thereof, which said committee was then and there a duly appointed and constituted standing committee of said common council, and of which said *Robert L. Rudolph* then and there was a duly appointed, qualified, and acting member, for the action, vote, and decision of said common council and of said committee on judiciary on the question of the allowance and payment of said claim, which said claim was then and there within the jurisdiction, power, and authority of said common council to allow and pay or to disallow the same; that the said *Robert L. Rudolph,* being then and there such alderman and member of said common council and of said committee on judiciary thereof as aforesaid, and while

said claim of said Charles H. Hamilton against said city of Milwaukee was then and there duly pending before said common council and said committee on judiciary thereof for the action, vote, and decision thereon of said common council and of said committee on judiciary thereof, and of said *Robert L. Rudolph* as one of the members of said common council and of said committee as aforesaid, did then and there on said 19th day of April, A. D. 1901, at said county, unlawfully, feloniously, knowingly, and corruptly attempt to commit the crime of bribery, and did then and there unlawfully, feloniously, knowingly, and corruptly advise, solicit, ask, and demand of said Charles H. Hamilton that he, the said Charles H. Hamilton, then and there commit the crime of bribery by him, the said *Robert L. Rudolph,* then and there unlawfully, feloniously, knowingly, and corruptly advising, soliciting, asking, and demanding of him, the said Charles H. Hamilton, then and there that he, the said Charles H. Hamilton, then and there pay over and deliver to him, the said *Robert L. Rudolph,* the sum of one hundred ($100) dollars in money, then and there of the value of one hundred ($100) dollars, then and there to be paid to and used by him, the said *Robert L. Rudolph,* for the purpose and with intent on the part of the said *Robert L. Rudolph* then and there of unlawfully, feloniously, and corruptly influencing the action, vote, and determination of the said common council of the said city of Milwaukee, and of the members thereof, and of said committee on judiciary, and of said *Robert L. Rudolph* as a member thereof, upon the question of the allowance and payment of said claim of said Charles H. Hamilton against said city of Milwaukee then and there pending before said common council and said committee on judiciary thereof as aforesaid, and of unlawfully, feloniously, and corruptly influencing the action, determination, and vote of said *Robert L. Rudolph* as such alderman and member of said common council and member of said committee on judiciary thereof on the said question of the allowance and payment of said claim; and he, the said *Robert L. Rudolph,* then and there did promise the said Charles H. Hamilton, for and in consideration of such payment, to use his interest and influence as such alderman and member of said common council and of said committee thereof in favor of the allowance and payment of said claim of said

Charles H. Hamilton against said city of Milwaukee, and to vote and act in a manner for the furthering and obtaining of a favorable action by said common council and of said committee on judiciary thereof, on said question then and there pending as aforesaid, to wit, the allowance and payment of said claim; that said unlawful, felonious, and corrupt advising, soliciting, asking, and demanding of him, the said Charles H. Hamilton, by him, the said *Robert L. Rudolph,* to commit the crime of bribery as aforesaid, then and there failed in being committed and was of no effect; and that the crime of bribery accordingly then and there failed in being committed, because the said Charles H. Hamilton then and there refused to comply with the said solicitation, advising, request, and demand of the said *Robert L. Rudolph.*"

The defendant demurred to the indictment, averring that it did not state facts sufficient to constitute an offense. The court overruled the demurrer, and the defendant excepted. The defendant then interposed a special plea in bar, wherein he alleged the calling of a grand jury by the municipal court of Milwaukee county to inquire into alleged commissions of crimes and charges of crimes in the county; that a grand jury was duly summoned, qualified, and sworn in the municipal court and directed to make due inquiry into all charges and commissions of crime in the county; that the defendant, on January 20, 1902, was subpœnaed to appear before this grand jury on January 21, 1902; that he obeyed such subpœna and appeared before the grand jury at the time and place as directed; was sworn as a witness in a proceeding before them and testified concerning transactions, matters, or things involving the official conduct of city aldermen during his official term as alderman of the city; and that such testimony so given by him before the grand jury was concerning the transaction, matter, or thing for which he is being prosecuted upon this indictment, and he therefore demanded judgment discharging him from further prosecution.

Upon the trial of the issue raised by the special plea in bar, it was admitted that defendant had been subpœnaed and

examined before the grand jury. Defendant then offered in evidence the minutes of the grand jury containing the following:

"*Robert L. Rudolph* sworn. Alderman of the Eleventh ward. Knows of no bribery or crookedness in public affairs. Member of railroad committee. Does not remember who introduced Manville ordinance."

Defendant then rested as to the issue raised by the special plea in bar. The state offered no evidence as to this issue. The prosecution moved the court to direct the jury to return a verdict for the state upon the issue raised by this special plea in bar, upon the ground that there was no evidence tending to support such plea. The court so directed the jury, and a verdict was found as directed. Defendant duly excepted to the action of the court.

The trial upon the plea of not guilty was then taken up before the jury. There was evidence tending to show that defendant, while a member of the common council of the city of Milwaukee, approached one Charles H. Hamilton, an attorney who had presented a claim for legal services against the city of Milwaukee in the sum of $1,625, while the claim was pending before a committee of the common council of which he was a member, and demanded that he pay him $100 to secure the allowance of this claim by the committee and for his influence and vote as such committee member. There is also evidence that defendant and two other members of the committee had colluded to secure $100 each from this claimant for their influence and votes for the allowance of the claim, and that, while the claim was pending before this committee, defendant and another member of the committee, Cooke, each asked the claimant to pay them this sum of money, and stated that if he would pay them this sum defendant would see to it that a quorum of the committee were convened and the claim allowed. The claimant refused to

comply with defendant's request and refused to pay the money demanded.

The case was submitted to the jury upon the evidence adduced and received and the instructions of the court. On November 18, 1905, they returned a verdict finding the defendant "guilty as charged in the indictment." The court overruled a motion for a new trial for various errors. Judgment was entered upon the verdict. Defendant prosecutes this writ of error to reverse the judgment and for a discharge from further prosecution, upon the ground that no offense is charged or established against him.

For the plaintiff in error there was a brief by *Julius E. Roehr* and *J. L. O'Connor,* and oral argument by *Mr. O'Connor.*

For the defendant in error there were briefs by the *Attorney General* and *A. C. Titus,* assistant attorney general, and by *A. C. Umbreit,* special counsel, and *Francis E. McGovern,* district attorney, and oral argument by *Mr. Umbreit.*

SIEBECKER, J.  The defendant alleges that the court erred in holding that the indictment charges an offense under ch. 34, Laws of 1901, whereby it is provided that: "Any person who shall advise the commission of or attempt to commit any felony as defined in section 4637 of the Wisconsin Statutes of 1898, that shall fail in being committed, the punishment for which such advice or attempt is not otherwise prescribed in these statutes, shall be imprisoned or fined . . ." as prescribed. It is contended that the court submitted the case to the jury upon the theory that defendant was being prosecuted for the offense of an attempt to commit the crime of bribery, but that the facts alleged and shown by the evidence fall short of establishing an attempt to commit the crime of bribery, for the reason that the fact of soliciting another to join in the commission of this offense does not constitute an attempt, in

that the alleged criminal transaction is devoid of any overt acts which are necessary to constitute an attempt to commit a crime. That solicitation to commit a crime is an offense at common law seems well supported by authorities and writers on the criminal law. Mr. Wharton, speaking of the result of the adjudications, states:

"Are solicitations to commit crime independently indictable? They certainly are, as has been seen, when they in themselves involve a breach of the public peace, as is the case with challenges to fight and seditious addresses. They are also indictable when their object is interference with public justice; as where a resistance to the execution of a judicial writ is counseled, or perjury is advised, or the escape of a prisoner is encouraged, or where the corruption of a public officer or a witness is sought, or invited by the officer himself." 1 Wharton, Crim. Law (10th ed.) § 179. See, also, 1 Bishop, New Crim. Law, § 767; 1 McClain, Crim. Law, § 220; *Comm. v. Flagg,* 135 Mass. 545; *Walsh v. People,* 65 Ill. 58; *People v. Hammond,* 132 Mich. 422, 93 N. W. 1084.

The language of ch. 34, Laws of 1901, is clear in expressing the idea that to advise or attempt to commit any felony defined in the statute is an offense, punishable as prescribed. The charge preferred in the indictment comes within the definition of this statute, and constitutes an offense within its terms.

It is urged that no attempt to commit a felony is proven by the evidence adduced, because no overt act by the defendant is shown, even though a criminal intent may be manifest. There is evidence tending to show that the defendant asked Hamilton for $100 as a condition for voting for the allowance of his claim, and urged him to pay it and an additional sum to other committee members, and that he offered to have the committee convened and to secure favorable action on the claim if his demands were granted. These acts occurred just before the committee was to take action and pass upon the claim, and were in immediate connection with and the nearest steps to an actual consummation of the offense. This gives

them the character of overt acts, done in furtherance of a criminal design. They are circumstances which show in their very nature that defendant committed them "in part execution of a criminal design, amounting to more than mere preparation, but falling short of actual consummation, and possessing, except for failure to consummate, all the elements of the substantive crime." 3 Am. & Eng. Ency. of Law (2d ed.) 250.

The defendant pleaded immunity from prosecution upon the ground that he had been subpœnaed and had appeared and given evidence before the grand jury. This claim is based on ch. 85, Laws of 1901, providing that no witness or party shall be excused from testifying in certain cases upon the ground that his disclosure might expose him to prosecution for any crime, but that he shall not be prosecuted for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence. It appears that defendant was subpœnaed, that he appeared and was sworn, and that he testified before the grand jury to the effect: that he was an alderman from the Eleventh ward of the city; that he knew of no bribery or crookedness in public affairs; that he was a member of the railroad committee; and that he did not know who introduced the Manville ordinance. In the case of *State v. Murphy, ante,* p. 201, 107 N. W. 470, this statute is construed, and it is there held that a denial by a witness that he knew of bribery in public affairs does not entitle him to immunity upon the ground that he has testified concerning any transaction, matter, or thing within the purview of the statute. The facts of the *Murphy Case* and of the instant case are, as to this question, in all respects the same, and the decision in that case rules the question here.

It is, however, claimed that, when the defendant testified before the grand jury to the fact that he was an alderman from the Eleventh ward of the city of Milwaukee, he gave testimony which came within the constitutional privilege that

"no person . . . shall be compelled in any criminal case to be a witness against himself" (sec. 8, art. I, Const.), because this fact is material to establish the offense charged in this indictment and of which he was found guilty. In *State v. Thaden,* 43 Minn. 253, 45 N. W. 447, Justice MITCHELL,. speaking for the court on this subject, says:

"All the authorities agree to the general proposition that the statement of the witness that the answer will tend to criminate himself is not necessarily conclusive, but that this is a question which the court will determine from all the circumstances of the particular case, and the nature of the evidence which the witness is called upon to give."

This rule is supported in this court in *Kirschner v. State,.* 9 Wis. 140; *Emery v. State,* 101 Wis. 627, 78 N. W. 145; and in other courts in *Calhoun v. Thompson,* 56 Ala. 166; 1 Burr's Trial, 245; *Queen v. Boyes,* 1 B. & S. 311. In the last case cited it is declared "that, to entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence that the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer." The fact that a witness may be asked to testify concerning a fact which is not a part of a criminal transaction, but is material in a prosecution based on such a transaction, as giving his name or his presence in some locality remote from the scene of crime, or stating whether he was, in fact, a public official at the time it is claimed the offense was committed, do not in themselves constitute incriminating statements tending to show him· guilty of crime, though upon a prosecution for some offense it may develop. that they are material. It is manifest that if defendant were testifying in another case and he were asked his name, his residence, or whether he had been a certain official at a specified time, it could not be urged that he need not answer upon the ground that it might expose him to a prosecution for a

Rudolph v. State, 128 Wis. 222.

crime, for in themselves they do not tend to show criminality, though a combination of circumstances in connection with some criminal transaction might make it material to show them in a criminal prosecution.

"It is obvious, . . . that the notion of a fact 'tending to criminate' is that of a fact forming, in the phrase of Chief Justice MARSHALL, 'a necessary and essential part of a crime.'" 3 Wigmore, Evidence, § 2261.

Mr. Wharton, in his Criminal Evidence (9th ed.) § 466, speaking on this subject, states:

"We have several rulings to the effect that a witness cannot be compelled to give a link to a chain of evidence by which his conviction of a criminal offense can be furthered. This proposition, however, cannot be maintained to its full extent, since there is no answer which a witness could give which might not become a part of a supposable concatenation of incidents from which criminality of some kind might be inferred. To protect the witness from answering, it must appear from the nature of the evidence which the witness is called to give that there is reasonable ground to apprehend that, should he answer, he would be exposed to a criminal prosecution. . . . The question is for the discretion of the judge, and in exercising this discretion he must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. But in any view the danger to be apprehended must be real, with reference to the probable operation of law in the ordinary course of things, and not merely speculative, having reference to some remote and unlikely contingency."

Tested by this rule, we cannot conceive how the bare statement by defendant that at a certain time he was an alderman of the city of Milwaukee, a fact which must obviously have been generally known, could in any degree aid in tending to expose him to the danger of a prosecution for a crime. To give it such significance would certainly be speculative and imaginary; such a result would not follow naturally from such a statement. The following cases have a bearing on this subject: *Brown v. Walker,* 161 U. S. 591, 16 Sup. Ct.

Rudolph v. State, 128 Wis. 222.

644; *Miskimmins v. Shaver,* 8 Wyo. 392, 58 Pac. 411; *Ex parte Irvine,* 74 Fed. 954. See, also, 1 Greenleaf, Evidence (16th ed.) § 469d *et seq.*

It is claimed that the court erred in receiving the evidence of Hamilton and Pease concerning statements made in the clerk's office and before the members of the committee having this claim in charge, and to the effect that, if the claim were not allowed by the committee and council, Hamilton would seek to enforce it by suit. The evidence tends to show that defendant participated in the committee proceeding while this claim was being considered, and that he probably was informed of the claimant's threatened enforcement by suit if it were disallowed by the common council. Under these circumstances the ruling was proper.

. . Further claim is made that the conversation elicited from Mr. Rose on cross-examination was improper, because it in nowise related to what he, as defendant's witness, had testified on direct examination, which tended to impeach the witness Hamilton, called by the state. It appears sufficiently that this conversation had a bearing on testimony given on direct examination and served to explain it. This made it relevant, and it could properly be adduced on cross-examination.

We find no error in the record.

*By the Court.*——Judgment affirmed.

CASSODAY, C. J., took no part.