The State *v.* Schleifer.

THE STATE OF CONNECTICUT *vs.* ERNEST SCHLEIFER.

Third Judicial District, New Haven, June Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Solicitation to commit a crime is punishable at common law.

The act of solicitation or incitement to commit a crime, is to be distinguished on the one hand from merely entertaining an intention, which is not punishable, and on the other from an attempt to commit a crime, which requires some act done in part execution of a design to commit the crime.

Even though the solicitation is of no effect, and the crime counselled is not in fact committed, the solicitation is an indictable offense.

It is as much of an offense to solicit many in an assemblage to commit a crime, as it is thus to solicit a single individual.

The crime of solicitation is not limited to acts of incitment to commit felonies, but it extends to misdemeanors as well and to every instance where the attempt to commit the same offense would be a crime.

While this court has no right to invent new crimes, it has the right to ascertain and declare the common law,—no less the criminal than the civil.

Our ancestors never formally adopted the common law of England, but they were mainly influenced in their lives and customs by the English law, and our courts apply the principles of that common law to the decision of causes, so far as they seem applicable to our social conditions.

The accused was informed against for inciting an assemblage of persons to commit felonies and aggravated crimes akin thereto, by orally

urging them, during the existence of a railroad strike, to perpetrate
or attempt to perpetrate the crimes of murder, robbery, aggravated
assault with deadly or dangerous weapons, assault with intent to
murder and assault with intent to rob.  *Held* that the information
was sufficient, and that the trial court erred in quashing it.

Argued June 12th—decided July 27th, 1923.

INFORMATION for orally addressing incendiary language to a promiscuous assembly, thereby soliciting and inciting some or all of the persons so assembled to commit, or to attempt to commit, murder, robbery, aggravated assaults and other serious offenses, brought to and tried by the Superior Court in New Haven County, *Webb, J.,* upon a motion to quash the information; the court granted the motion and dismissed the case, and from this judgment the State, with permission of the presiding judge, appealed. *Error, judgment set aside and cause remanded.*

*Arnon A. Alling,* State's Attorney, with whom was *Walter M. Pickett,* Assistant State's Attorney, for the appellant (the State).

*Benjamin Slade* and *Samuel H. Platcow,* with whom was *Thomas J. Spellacy,* for the appellee (the accused).

WHEELER, C. J.  The information before us charges that the accused, intending to endanger the public peace and to incite and procure the commission and perpetration of divers felonies and aggravated crimes akin to felonies, did unlawfully solicit, urge, command, counsel and endeavor to incite, cause and procure some or all of a large number of persons assembled, to the State's Attorney unknown, to perpetrate or attempt to perpetrate the crimes of murder, robbery, aggravated assault with deadly or dangerous weapons, assault with intent to murder and assault with intent to rob,

the same being felonies or aggravated crimes akin to felonies, by oral address in language in substance as follows: "You will never win the strike with soft methods. You young men ought to go out on the bridge. Don't use eggs, use coal or indelible ink. Break foremens' windows at their homes. Watch the scabs when they come from work, lay for them, especially on pay day. Take them in a dark alley and hit them with a lead pipe. That is the softest thing you can use. Reimburse yourselves for what we have sacrificed for five months. Don't forget to bump off a few now and then, so Mr. Pearson will know that you are not getting cold feet. You car men know how to take a brake-shoe off. Take the brake-shoe and put it under something that will put the cars off the irons. A little sand or emery in the journal boxes will help greatly. Don't be satisfied with trimming the engines. Put some of the cars on the bum. Also if convenient, put something in between the frames and rods of engines on sidings. Get busy young fellows, and trim these scabs. Things are running too smooth on the New Haven road, but let me hear from you while I am here. Go ahead and rip things and don't let the injunction stop you from trimming these scabs. Don't forget to tie them up with derailments. You boys ought to cut them all up."

To this information the accused filed a motion to quash, which the trial court sustained upon the grounds as stated in part therein, viz: "1. That said information is insufficient in law. 2. That said information fails to set forth any offense or crime. . . . 8. That said information merely charges the defendant with having uttered certain words set forth in said information, and such utterances do not constitute a crime by virtue of any statute of the State, or at common law. 9. That said information merely states that the de-

fendant entertained certain intentions, as evidenced by certain expressions made by him, and such intentions do not, either at common law or by virtue of any statute, constitute crime." In its memorandum on the motion to quash, the court held that in the common-law crime of solicitation "the inducement or invitation" must have been "directed to one individual, soliciting the accomplishment of some particular act, which, if complied with, would result in the commission of some specific offense." The trial court further held: "While it cannot be seriously denied that the public utterances in a promiscuous assembly of such entreaties and exhortations as are charged in this information, are highly prejudicial to the public peace, and ought to be seriously penalized, it is a situation that should be met by appropriate legislation. I do not feel warranted in view of all the authorities in undertaking to extend the present limitations of the common-law crime of solicitation so as to include the acts of the accused now under consideration."

The accused supports his motion to quash and the ruling of the trial court thereon, by maintaining that solicitation alone is not a crime under the common law and has never been treated as such except in cases where the solicitation was in fact the crime of an attempt. It is necessary that we meet this proposition directly. If the law be as counsel for the accused claim, we might well say as Lord Kenyon, the Chief Justice of the Court of King's Bench, said in *Rex* v. *Higgins*, 2 East, 5, 16: "The offence imputed to this defendant is of the most serious kind, no less than, that for his own wicked gains he solicited and incited a servant to rob his master; and can it be a question in a country professing to have laws subservient to justice and morality, whether this be an offence?"

The crimes which the State charges the accused in-

tended by his oral address to urge his hearers to commit, were felonies or aggravated crimes akin to felonies, to wit, murder, robbery, aggravated assault with deadly or dangerous weapons, assault with intent to murder, and assault with intent to rob. The language alleged to have been used by this accused does advise, incite and urge those to whom it was directed to the commission of these crimes, as well as the crime of breach of the peace. It would be difficult to conceive of an evil-minded and desperate criminal urging a more dangerous and dastardly course of action. It invited and commanded not alone deeds of violence toward the railroad employees who remained on their jobs and the members of their households, but also the most serious injury, and in all probability death to the innocent travelers upon the railroad and to the crew hands.

The immediate question for us to decide is, whether our law is remediless to punish the individual who, with wanton disregard of life and property, incites and commands not one, but many, to the commission of gravest crimes. We determined in 1828 in *State* v. *Avery*, 7 Conn. 266, 270, that the solicitation to another, by letter, to commit adultery, was a high crime and misdemeanor nearly allied and equal in guilt to felony, and that an information charging this offense was sufficient under our common law. It was urged that such a solicitation was not a crime because it was no more than an intent to commit evil. We disposed of the claim in these words: "But it is argued, that a mere intent to commit evil is not indictable, without an act done; but is there not an act done, when it is charged that the defendant solicited another to commit adultery? The solicitation is an act; and God forbid, that it should not be considered as an offence." This case has been very generally cited as holding that a solicita-

tion to commit a felony is a crime at common law in Connecticut. That understanding of the opinion is what the case decided. It is now argued by this accused that the decision goes no further than to hold that an attempt to commit the crime of adultery is a high crime and misdemeanor. It is true that we associated the crime of an attempt with that of a solicitation, when we said: "And an attempt to commit, or a solicitation of another to commit such a crime, must be, at least, a high crime and misdemeanor; and we have already said, that a high crime and misdemeanor is nearly allied and equal in guilt to felony." But we recognized the existence of the two crimes, attempt and solicitation, and placed them on a parity as to the crime committed. But the entire opinion shows that we were treating of, and deciding a case of solicitation. Our citation of and quotation from the leading case of *Rex* v. *Higgins, supra,* makes this clear.

In Swift's Digest, published five years before the opinion in *State* v. *Avery,* we find JUDGE SWIFT cites *Rex* v. *Higgins, supra,* as authority for this statement of our law: "A mere intention to commit a crime, unaccompanied by any act, cannot be punished by a civil tribunal. A solicitation to commit a crime is punishable; for the solicitation is an act. So an attempt to commit a crime, without the actual perpetration of it, is punishable; for the attempt is an act." 2 Swift's Digest (Ed. 1823) p. 258; *State* v. *Sullivan,* 110 Mo. App. 75, 87, 84 S. W. 105.

Endeavor is made by counsel for the accused, and by the few authorities which hold that solicitation to commit a felony is not a crime at common law unless it be an attempt, to argue that the sending of a letter in *State* v. *Avery, supra,* was such an act as made the crime charged in the information one of an attempt. Exactly the same endeavor is made to distinguish other

cases which hold definitely that the solicitation of another to commit arson and murder upon the offer of a bribe for so doing is a crime, by treating the offer of bribe as an act constituting an attempt. Neither the letter nor the bribe constitutes such an act of endeavor as to make the crime one of attempt. An attempt "necessarily includes the intent, and also an 'act of endeavor' adapted and intended to effectuate the purpose." *State* v. *Wilson,* 30 Conn. 500, 503. The act of endeavor must be "some act done in part execution of a design to commit the crime." *State* v. *Donovan,* 28 Del. (5 Boyce) 40, 45, 90 Atl. 220. A mere solicitation by itself is never an attempt. And the inciting or urging, whether it be by a letter or word of mouth, is a mere solicitation, and it does not change its character if the solicitation to crime is accompained by a bribe as an inducement to its commission. In *State* v. *Donovan, supra,* the court, in sustaining a demurrer to a count in an indictment charging the alleged crime of an attempt, said (p. 46): "This being true, it remains to inquire of what sort must be the overt act necessary to satisfy the definition of an attempt; and although it is clear that the act need not be the next preceding or proximate act necessary to consummation of the crime intended, we are, nevertheless, of the opinion that the mere offer of money, or solicitation, to commit arson is not the sort of act necessary to satisfy the definition." The great weight of authority in this country supports the doctrine of *State* v. *Avery, supra.*

In *Commonwealth* v. *Flagg,* 135 Mass. 545, 549, the information charged a solicitation to burn a barn, and the judgment of conviction was sustained. The court, by Morton, C. J., held: "It is an indictable offence at common law for one to counsel and solicit another to commit a felony or other aggravated offence, although the solicitation is of no effect, and the crime counselled

is not in fact committed." In *Commonwealth* v. *Randolph*, 146 Pa. St. 83, 23 Atl. 388, it is held that the solicitation to commit murder, accompanied by a money bribe for so doing, is a crime at common law. The case of *Smith* v. *Commonwealth*, 54 Pa. St. 209, upon which the accused in the case at bar especially relies, is distinguished as deciding merely that solicitation to commit a misdeameanor is not a crime at common law, a question which *Commonwealth* v. *Randolph* does not determine. In *State* v. *Quinlan*, 86 N. J. L. 120, 125, 91 Atl. 111, the court quotes in approval Stephen's Digest of Criminal Law (Ed. 1877) p. 33: "Every one who incites any person to commit any crime, commits a misdemeanor, whether the crime is or is not committed," and says: "The common-law doctrine is founded upon the principle that public policy requires that the solicitation or incitement to the commission of an act which is injurious to the public shall be punished as a criminal offense." The court was passing upon a conviction under a statute making the solicitation to certain crimes a high misdemeanor, and it held that the purpose of the statute was to raise "violations under the Act from simple misdemeanors to high misdemeanors." At the same term, in *State* v. *Boyd*, 86 N. J. L. 75, 79, 91 Atl. 586, the same court held: "Incitement to the commission of a crime is a misdemeanor at common law, whether the crime advocated be actually committed or not . . . ; and this (by weight of authority) whether the crime advocated be a felony or a misdemeanor." In *State* v. *Donovan, supra,* the court says at page 49: "Certainly to incite or solicit another to commit a felony or other aggravated crime, whether it be actually committed or not, is a misdemeanor at common law; and generally speaking solicitations which in any way attack public society or safety are indictable as distinct offenses." Authorities supporting

these cases are: *State* v. *Bowers,* 35 S. Car. 262, 266, 41
S. E. 488; *Walsh* v. *The People,* 65 Ill. 58; *United States*
v. *Galleanni,* 245 Fed. Rep. 977, 978; *People* v. *Bush,*
4 Hill (N. Y.) 133, 135; *Rudolph* v. *State,* 128 Wis. 222,
228, 107 N. W. 466; *Damarest* v. *Haring,* 6 Cowen (N.
Y.) 76, 88; *United States* v. *Lyles,* 4 Cranch, C. C. 469;
*State* v. *Sullivan,* 110 Mo. App. 75, 87, 84 S. W. 105;
note to *State* v. *Butler,* 25 L. R. A. 436 (8 Wash. 194, 35
Pac. 1093); 16 Corpus Juris, 117; Clark & Marshall,
Law of Crimes (2d Ed.) p. 193; 8 Ruling Case Law,
§ 384, p. 350; Desty on Criminal Law, § 12c; and
standard authorities on criminal pleading contain
forms of solicitation to commit a crime as well as for
attempts to commit a crime. Archbold, Cr. Pl. (1st
Amer. Ed.) 238, 403; 2 Chitty's Criminal Law, 50.

The trial court criticises the information because it
does not charge that any particular person was solicited
to the commission of any particular crime in any speci-
fied place, and the State assigns this among its other
alleged errors. It was not necessary to make such an
allegation. The solicitation was directed to each one
present in the assemblage. It would not have been
more direct or more compulsive if each one in the
assemblage had been called by name by the accused.
The law of criminal pleading is settled upon this point.
The precise point arose in *Reg.* v. *Most,* 14 Cox's C. C.
583, 588, in a prosecution under a statute punishing
the solicitation to murder. Lord Coleridge, the Chief
Justice, expressed with great clearness his view: "An
endeavor to persuade or an encouragement is none the
less an endeavor to persuade or an encouragement,
because the person who so encourages or endeavors to
persuade does not, in the particular act of encourage-
ment or persuasion, personally address the one or more
persons whom the address which contains the en-
couragement or the endeavor to persuade reaches. The

argument has been well put that an orator who makes a speech to two thousand people does not address it to any one individual amongst those two thousand; it is addressed to the whole number. It is endeavoring to persuade the whole number or large portions of that number, and if a particular individual amongst that number addressed by the orator is persuaded, or listens to it and is encouraged, it is plain that the words of this statute are complied with; because according to well-known principles of law, the person who addresses those words to a number of persons, must be taken to address them to the persons who he knows hear them, who he knows will understand them in a particular way, do understand them in that particular way, and do act upon them." Aside from the conclusion, which we think should have been "and may act upon them" instead of "and do act upon them," we coincide with this statement. *The People* v. *Most,* 171 N. Y. 423, 429, 64 N. E. 175; *United States* v. *Galleanni,* 245 Fed. Rep. 977; *Masses Pub. Co.* v. *Patten,* 246 Fed. Rep. 24, 38.

To the argument in behalf of the accused, that the existence of statutes to punish solicitation to crime as an independent offense, shows that there was no such common-law offense, hence the statutory offense was created,—it is enough to say that these statutes are as a rule declaratory of the common law as has been quite frequently pointed out, or they have been adopted for the purpose of adding to or taking from the penalty under the common law. *State* v. *Quinlan,* 86 N. J. L. 120, 125, 91 Atl. 111; *Commonwealth* v. *McHale,* 97 Pa. St. 397, 408.

The ground of demurrer that the information merely states that the defendant entertained certain intentions, may be answered briefly. The mere intention of the accused, unexpressed, does not, and is not claimed

to, subject the accused to criminal punishment. But when the intention be expressed in the form of a solicitation, or incitement, or a command to another to commit a crime, and that crime a felony or a high crime and misdemeanor akin to felony, it is a crime under our common law. *Rex* v. *Higgins*, 2 East, 5, 16; 2 Swift's Digest (Ed. 1823) p. 258; *United States* v. *Nearing*, 252 Fed. Rep. 223, 227.

*State* v. *Avery*, 7 Conn. 266, decided the precise point before it, which concerned a felony. The decision was not intended as a limitation of our common law to solicitations to the commission of a felony. Swift put the rule, as we have seen, that "a solicitation to commit a crime is punishable." This we think expressed the rule of our common law. It was the rule adopted in *Rex* v. *Higgins* upon which JUDGE SWIFT relies for his authority. And this we think is the conclusion which logic and justice requires.

In Clark & Marshall, Law of Crimes (2d Ed.) § 132, it is said: "Whether solicitation to commit a misdemeanor is indictable, is not so clear. Some of the courts have made a distinction in this respect between felonies and misdemeanors. . . . There is no more reason, however, for such a distinction in the case of solicitation than there would be for holding an attempt to commit a misdemeanor not to be indictable; and there are many cases in which an indictment for solicitation to commit a misdemeanor has been sustained." In *State* v. *Sullivan*, 110 Mo. App. 75, 86, 84 S. W. 105, the court says: "While, as we have just said, doubt has been cast on the question, yet we believe that it was a common-law offense to incite or solicit another to commit a misdemeanor. The English courts have uniformly held that an attempt to commit a misdemeanor was itself a misdemeanor, and was to be punished as such. Thus, it was said that an attempt

The State *v.* Schleifer.

to commit an act which was a misdemeanor, whether by statute or common law, was itself a misdemeanor. . . . Text-writers have laid down the law that to solicit the commission of an offense was indictable, without noticing any distinction whether the offense solicited was a felony or misdemeanor." In 16 Corpus Juris, p. 118, the rule of the authorities is summarized thus: "The weight of authority discards the test depending on the distinction between felonies and misdemeanors, and makes the decision depend on whether the crime advised or counseled is of a high and aggravated character, and such as seriously affects the public peace and economy," and cites a number of cases which support this rule. Bishop's New Criminal Law (Vol. 1, Ed. 1892) states the rule in § 768: "Though to render a solicitation indictable, it is in general, as in other attempts, immaterial whether the thing proposed is technically a felony or a misdemeanor, yet as the soliciting is the first step only in a gradation reaching to the consummation, the thing intended must, on principles already explained, be of a graver nature than if the step lay further in advance."

The rule laid down by Judge Lawrence in *Rex* v. *Higgins*, 2 East, 5, 21: "All offences of a public nature, that is, all such acts or attempts as tend to the prejudice of the community, are indictable," is a sound rule when applied, as he undoubtedly intended it to be applied, to the act which the court should find was, by the settled judgment of the community, held to be so prejudicial to it that it should be prevented by being penalized when done. 1 Russell on Crimes (Int. Ed., 1896) p. 194, says: "It is clear that all felonies, and all kinds of *in*ferior crimes of a public nature, as misprisons, and all other contempts, all disturbances of the peace, oppressions, misbehavior by public officers, and all other misdemeanors whatsoever of a public

evil example against the common law may be indicted."
In some of the jurisdictions which hold that solicitation
to commit a crime is not an indictable misdemeanor,
they have no common-law offenses, as in Kansas and
California. In others, exceptions are recognized, the
most usual being breaches of public peace and the in-
terference with public justice. *State* v. *Baller*, 26 W.
Va. 90.

The rule adopted by perhaps the majority of the
American courts which have ruled upon the matter
that solicitation to commit a crime is a substantive
offense where the crime solicited is a felony or a crime
of a high and aggravated character, leaves the de-
termination of what crime is a solicitation in doubt.
A breach of the peace would not ordinarily be esteemed
a crime of a high and aggravated character, and yet
solicitation to such an offense has been regarded as
indictable at common law. Certainty in the knowl-
edge of what is or is not a crime is the safety of the
individual. The solicitation to a crime should be
a crime in every instance where the attempt to commit
the same offense would be a crime. Such a rule is
definite and understandable, entirely practical, and
completely just. The solicitation to another to a
crime is, as a rule, far more dangerous to society than
the attempt to commit the same crime. For the
solicitation has behind it an evil purpose coupled with
the pressure of a stronger intellect upon the weak
and criminally inclined. The information before us
under the claims of the State's Attorney charges the
crimes of felony, and of aggravated crimes akin to
felonies, and hence is brought squarely within the
rule of the majority of the authorities.

Our consideration of the case has led to the approval
of a rule somewhat broader than that of some of these
authorities, but one which the consideration of this

case has shown us to be necessary for the public safety. Suppose the accused had carefully incited and commanded his hearers to the commission of crimes against the public peace and safety which were neither felonies nor aggravated crimes, he could not under the rule of these authorities be informed against, for he would have committed no crime. Yet who can doubt that his inflamed hearers, if they acted upon his words, would not distinguish between the high and aggravated crime and the lesser crime of his specific advice and command, and that their beginning of a breach of the public peace and safety, and of the destruction of property, would inevitably lead to consequences of serious harm alike to the individual and to the State?

It is said our court has no right to invent new crimes, and that is true, but it has the right to ascertain and declare the common law, no less the criminal than the civil law. The statute prescribes the penalty, but the common law has formulated and determined the great body of our criminal law, and without this common law crimes could not be prosecuted nor penalized. JUSTICE HAMERSLEY, in *Brown's Appeal*, 72 Conn. 148, 151, 44 Atl. 22, and in *Rookey* v. *State*, 70 Conn. 104, 110, 38 Atl. 911, has illuminatingly discussed the sources of our common law and the development of our criminal common law. In the first of these cases he says: "When the 'Jurisdiction of Connecticut' was organized in 1639, the law of the land, as recognized by the settlers, consisted in the orders of the General Court, and, in case of the defect of a law, in the Word of God. Educated as Englishmen and subjects of the British crown, our ancestors were mainly influenced in their laws and customs by the English law. . . . They never formally adopted the common law of England. . . . As our jurisprudence developed, the courts applied the principles of the

common law to the decision of causes, so far as they seemed applicable to our social conditions." And in the latter case, JUSTICE HAMERSLEY says: "The underlying theory of the Connecticut law and of the English law, was the same: acts in violation of the public peace, and of the rules prescribing the duties of individuals to the State and to each other, as settled by universal acceptance, are offenses. Where these rules are not formulated by statute, they may be declared by courts; and a 'common law' is developed in the process of so regulating the application of this theory through legislation and judicial decisions, as to produce a reasonable and defined system of jurisprudence."

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.