STATE v. FREDERICK CASTLE AND OTHERS.

Submitted March 20, 1907—Decided June 10, 1907.

1. Under the act of 1903 (*Pamph. L., p.* 341), in counties where a new grand jury is authorized, grand jurors summoned to attend at the opening of the court are to serve until the new grand jury appear.

2. The order of the court directing the sheriff to summon a new grand jury pursuant to the act of 1903 (*Pamph. L., p.* 341) need not be filed with the clerk.

3. An indictment which designates a house by its street number need not set forth that number in words at length. It is an arbitrary symbol, and should be set forth in accordance with the fact.

4. An indictment which charges police commissioners holding office under the act of 1885 (*Gen. Stat., p.* 1551) with failure to inquire into the neglect and omission of police officers under their control to suppress houses of ill-fame and gaming-houses, and to discipline and punish such of the officers as were guilty of neglect of duty, is valid.

5. Police commissioners may be jointly indicted for neglect of their public duty as such.

6. An indictment of police commissioners holding office under the act of 1885 (*Gen. Stat., p.* 1551) for failure to inquire into the neglect and omission of police officers under their control to suppress houses of ill-fame and gaming-houses, and to discipline and punish such of the officers as were guilty of neglect of duty, is not multifarious because it specifies many such houses.

On motion to quash indictment.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the state, *Henry Young,* prosecutor of the pleas.

For the defendants, *Francis Child* and *Louis Hood.*

The opinion of the court was delivered by

SWAYZE, J.   The defendants move to quash an indictment found at the Essex Oyer and Terminer and removed to this court by *certiorari.*

The indictment contains two counts.  The first charges that the three defendants were members of the board of police commissioners of the city of Newark; to that board was entrusted the government, control and management of the police department and police force of the city and the direction and control of all police matters therein; that the defendants were charged with the duty of using and exercising all proper, reasonable and effective means and all means within their power for preserving public peace and insuring good order and for suppressing all houses of ill-fame and prostitution and gaming or betting-houses therein, and for enforcing the laws of this state relating thereto; that the board of police commissioners and the defendants as members thereof had under their control and management the police force, and were vested with full and adequate power and authority for the proper and efficient enforcement of said duty; that houses of ill-fame and prostitution and gaming or betting-houses were kept at places specified by street and number, all of which defendants knew; that the defendants neglected and omitted to use and exercise and cause to be used and exercised all proper, reasonable and effective means and all means within their power as members of the board of police commissioners for the suppression and prevention of the keeping and maintenance of said houses, and neglected and omitted to enforce the laws of the state in respect thereto, and suffered and permitted the houses to be kept and maintained

without interference and without proper, reasonable or effective endeavor on their part, and without using all means within their power for the suppression and prevention of the keeping and maintenance of said houses, and for the enforcement of the laws in respect thereto.

The second count charges the defendants with the duty of directing and controlling the members of the police force under their command and direction and of inquiring into the manner of performance of duty by each and every member of the police force and of punishing violations or neglects of duty by members of the force; it charges knowledge of the existence of the houses of ill-fame and gaming-houses on the part of the defendants, and the officers and members of the police force; neglect to suppress the houses and to enforce the laws; and that they suffered and permitted the places to be kept and maintained without interference on the part of the police force; that the defendants neglected to inquire into the keeping and maintenance of the houses, and the neglect and omission of the police force to suppress and prevent the keeping and maintenance thereof.

The first reason urged in support of the defendants' motion to quash is that the grand jury by which it was found was not a legal grand jury. This objection is founded on the act of 1903. *Pamph. L., p.* 341. The act, after providing that the sheriffs shall cause to come before the Court of Oyer and Terminer at the time and place of holding the court twenty-four men to serve as grand jurors, enacts that in counties with a population exceeding two hundred and fifty thousand the sheriffs shall cause to come before the court six weeks thereafter twenty-four men to serve as grand jurors in the place and stead of the grand jurors summoned to attend at the opening of the court, and when the grand jurors so summoned shall appear for service, the court shall discharge those summoned to attend at the opening of the court. The court is, however, authorized by order to direct the sheriff to refrain from summoning the new grand jury, in which case the *general* [evidently meaning grand] jurors summoned to attend

at the opening of court shall continue to serve until the end of the term unless sooner discharged.

The caption of the indictment is not before us, but in the printed book there appears what seems to be an extract from the minutes, not certified in any way, which sets forth the names of the grand jurors who appeared at the opening of the September Term, 1906. Whether the indictment was found by this grand jury or not is not shown by the return to the *certiorari* nor is it to be inferred from anything in the printed case.

If the fact be as stated in counsel's brief, we think it is not a valid objection. The evident intent of the act is that the grand jury summoned for the opening of the term shall serve until a new grand jury appears. It is not suggested that a new grand jury actually appeared. The statute expressly authorizes the court by order to direct the sheriff to refrain from summoning new grand jurors, and we must assume that such order was made unless it appears to the contrary. The clerk returns that no such order is on file, but the statute does not require it to be filed, nor even to be in writing. We see no reason why a mere verbal order to the sheriff will not suffice, and if the use of the words "by order direct" imply something more, the written order may well be given to the sheriff and not filed with the clerk.

An objection urged against the form of the indictment is that the street numbers of the houses of ill-fame and gaming-houses are designated in the indictment by Arabic numerals and not written out in words at length. We recognize the general rule contended for and have no desire to relax its force; but it is not applicable to this case. The street numbers of houses in our cities do not indicate the numerical order of the houses, but are mere arbitrary symbols which have indeed a convenient relation to numerical order but nothing more. A house numbered 2 is probably in our American cities never next to a house numbered 1, and the house next to No. 1 may be numbered 5 or 7 or 1a or 1½. In many cities, as in Philadelphia, the house number may be a composite indicating the number of the block and the position of

the house in the block. What the rule is in Newark we are not advised. It is, however, safe to say that it would attract attention by its novelty if the number of the house, instead of being in Arabic numerals, were written out in words. Strict accuracy would require that in pronouncing the number of a house we should say, to take a concrete illustration, two-one and not twenty-one. Such a method is not uncommon in dealing with numbers that are in fact arbitrary symbols. The pleader seems to have shown care and accuracy in setting these symbols forth in accordance with the fact and not attempting to translate them into words.

The other objections go to the substance of the indictment. The first is that the board of police commissioners was a mere administrative body, not vested with criminal jurisdiction, not authorized to issue criminal process, or to sanction or authorize the raiding of houses of ill-fame or gambling-houses.

This objection overlooks the gravamen of the charge. The gist of the first count is the willfully suffering and permitting the specified houses to be kept and maintained without interference on the defendants' part and without proper, reasonable or effective endeavor, and without using all means in their power for the suppression and prevention thereof. The gist of the second count is the failure to inquire into the neglect and omission on the part of the police officers to suppress the public nuisances set forth in the indictment and to discipline and punish such of the officers as were guilty of neglect of duty.

If either count is good, the motion to quash must fail. *State* v. *Norton,* 3 *Zab.* 33, 48; *State* v. *Startup,* 10 *Vroom* 423, 429.

Without deciding whether it is the duty of the police commissioners to use and exercise all proper, reasonable and effective means, and all means within their power for suppressing houses of ill-fame and enforcing the laws of the state relating thereto as set forth in the first count, but without intimating any doubt as to the validity of that count, it is sufficient for the decision of this motion to examine the second count.

The statute creating the board of police commissioners entrusts them with the government, control and management of the police department and the direction and control of police matters. They are given full power and right to suspend and to expel or discharge any person employed or appointed in or under the department, provided good cause is shown after an investigation by the board.

Whatever may be the powers of the police as to the suppression of houses of ill-fame, we think that if the police force of a city willfully permits such houses to be kept without interference as this indictment charges, it is at least the duty of the police commissioners, charged by statute as they are with the discipline of the force, to investigate the conduct of the police under their control, and that if the police commissioners, with the knowledge which the indictment charges they had, willfully neglect to inquire into the conduct of the police force in permitting such a public nuisance, they are themselves guilty of neglect of a duty imposed upon them by law, and are indictable therefor.

The next objection is that the defendants are jointly indicted when the neglect of each is necessarily a separate offence. This is not the fact. The neglect charged is of the public duty of the defendants as police commissioners; that duty is a joint duty which cannot be exercised by any one of them alone, and the neglect is likewise joint. Each defendant must indeed concur in the neglect, but the result is a joint result. An early precedent of a joint indictment for nonfeasance is given in 2 *Chit. Crim. L.* *587.

No doubt seems to have been felt by Lord Mansfield that in a proper case a joint indictment might be found against two justices for improperly refusing to grant a license to an inn. *R.* v. *Young & Pitts,* 1 *Burr.* 556. In *People* v. *Meakim et al.,* 133 *N. Y.* 214, the Court of Appeals of New York sustained a joint indictment against three excise commissioners for neglecting for an unreasonable time to decide a complaint of the sale of liquor on election day. In a very recent case in this state directors of a street railway company were jointly indicted for involuntary manslaughter; the

duties of the defendants were diverse; some were concerned only with the operation of the road, and some with the scheme or system under which the operation was to take place. Had the objection now urged to this indictment been sound, it would have disposed of the indictment in that case. The point was not even raised and the case came on for trial upon the merits before three of the justices of this court, who delivered separate charges to the jury. Neither alluded to any difficulty in the way of holding the defendants jointly liable for negligence. *State* v. *Young,* 40 *Vroom* 592. We think there is no substance in the present objection.

As to the objections that the indictment is ambiguous, indefinite and vague, and bad for multifariousness, it is enough so say that there is a single definite charge of neglect of duty in failing to investigate the conduct of the police force under the control of the defendants. The averments as to the existence of numerous houses of ill-fame amount only to specifications of numerous instances of neglect, but the crime is single. It may well be that there would be no criminal neglect if there was but one house of ill-fame in the city; it may be necessary to prove the existence of many in order to establish the neglect. A similar view has been taken in a recent case in New York. *People* v. *Herlihy,* 73 *N. Y. Supp.* 236; *affirmed* in the opinion, 170 *N. Y.* 584.

The motion to quash is denied.