STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. PATRICK QUINLAN, PLAINTIFF IN ERROR.

Argued November 17, 1914—Decided January 27, 1915.

On error to the Supreme Court, whose opinion is reported in 86 *N. J. L.* 120.

For the defendant in error, *Michael Dunn.*

For the plaintiff in error, *Henry Carless, Henry Marelli* and *Gustav Henziker.*

PER CURIAM.

The judgment under review herein should be affirmed for the reasons expressed in the opinion delivered by Mr. Justice Kalisch, in the Supreme Court.

MINTURN, J. (dissenting). The defendant was indicted in Passaic county for uttering certain inflammatory and seditious language, at a public meeting during the existence of a strike among the mill workers of the city of Paterson.

The act upon which the indictment is based is section 53 of the Crimes act. *Comp. Stat., p.* 1744. The issue presented was simple and plain, and involved only the single inquiry whether the defendant had given utterance to the language attributed to him. That such is the fact is conceded in the

Supreme Court opinion, where this language is contained: "The defendant's crime was complete when he uttered the words." Having proved the *corpus delicti,* the state went further, and the defendant was tried upon a secondary case involving a prosecution *de novo* for a crime with which the indictment had not charged him, involving a criminal conspiracy with others to provoke a riot, and generally to subvert the existing social order. This will be apparent when it is related that after completing its case, the state injected into this simple issue the violent language of Mrs. Gurley Flynn, at the same meeting; the incidents and violence of an actual riot at an adjacent mill after the meeting; and a discussion and examination of the economic political doctrines of the Industrial Workers of the World, with which defendant was charged with being affiliated.

The fact that some of these matters were interpolated in the case upon cross-examination under objection, does not lessen their importance as substantive proof in the case of the state. Upon an indictment for a criminal conspiracy such proof would be appropriate and material, but in this case its presence was not only immaterial and irrelevant, but manifestly must have been prejudicial to the defendant.

As the indictment alleges, for months anterior to the trial the community was severely distressed by the existence of a bitter strike among the mill operatives, in which the citizens perforce took sides. So notorious had the strike become that at its conclusion a federal investigating committee made inquiry into its causes and incidents. That fact we must judicially notice. 1 *Best Ev.* 480.

In this social ferment, the quiet, dispassionate and orderly exercise of the reasoning faculties was absolutely indispensable to the proper administration of justice.

The Supreme Court substantially confesses the illegality of the testimony, but avoids the logical result of its admission by characterizing it as harmless, a complacent assumption which ignores the atmospheric conditions under which the trial took place. How can it, with reason, be asserted that

in such an environment, seething with the economic turmoil this record presents, the effect of such testimony upon the mind of the average juryman of the vicinage must be nil? One naturally inquires in this connection, why, having proved the *corpus delicti,* the state went further? Unless the object was to prejudice this defendant in the eye of a jury to whom in this situation this brand of social worker was anathema, no practical or legal purpose is apparent. Its conspicuous intended effect must have been to charge the crime of Mrs. Gurley Flynn, and the other agitators, as well as the riot at the mill, and the social sin of entertaining an ostracized economic faith, which labored for the abolition of the present wage system, to this defendant, upon the theory of a criminal conspiracy.

It is not necessary for this defendant to show that he was actually harmed by such testimony. He is here under the one hundred and thirty-sixth section of the Criminal Practice act, and it is enough that the tendency of such testimony was to harm him, and that it may have harmed him. *Ryan* v. *State,* 60 *N. J. L.* 582.

Repeatedly, the defendant, during cross-examination, was addressed as an I. W. W., until at one period he protested to the court; and throughout the case the defendant and his witnesses were subjected to an examination by the state under repeated objection by the defendant into the doctrines and tenets of their economic faith. Such a latitude of the right of cross-examination, it may be said, was subject to judicial discretion, and, in the absence of abuse, is not reviewable here. To this it may be answered that it was in no sense cross-examination, but was practically examination in chief, since the state alone elicited it over objection. But even the doctrine of judicial discretion, which in our books covers a multitude of forgiven errors, contains its limitations. It must relate to matters pertinent to the issue, or to specific facts which tend to discredit the witness, or to impeach his moral character. 1 *Rice Ev.* 586; *People* v. *Oyer and Terminer,* 83 *N. Y.* 436.

Under different auspices, a jury might be immune to the

baneful effect of it all; but in this environment its effect, as must have been unerringly calculated, was inevitably to produce the result reached here.

For these reasons this judgment should be reversed and the defendant tried *de novo*.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, BERGEN, BLACK, BOGERT, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ.   12.

*For reversal*—MINTURN, J.   1.