## Commonwealth *v.* Wiswesser, Appellant.

Argued December 20, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Theodore Lane Bean,* with him *John Edward Sheridan,* for appellant.

*Mark C. McQuillen,* First Assistant District Attorney, with him *Frederick B. Smillie* and *John A. Rieser,* District Attorneys, for appellee.

OPINION BY PARKER, J., January 31, 1939:

Louis E. Wiswesser was indicted in Berks County on nine bills of indictment. On petition to the Supreme Court by the defendant, a change of venue was granted

and the records were certified to the Court of Quarter Sessions of Montgomery County where the district attorney called for trial five of the bills charging embracery and solicitation to commit embracery. The defendant was found guilty by a jury on all of the bills. Five appeals were taken, the cases were argued at one time, and they will be considered in one opinion.

The argument of the appellant is grounded on three propositions which raise pure questions of law. We will consider those questions and then apply the law as so determined to the facts peculiar to the particular appeals. Defendant contends (1) that under the statutory definition of embracery the offense cannot be committed until the juror has received an official notification that he has been chosen for jury duty; (2) that solicitation to commit embracery is not an offense in Pennsylvania by statute or by the common law; and (3) that the trial judge erred in admitting certain alleged hearsay testimony.

(1) The Criminal Code of 1860 (Act of March 31, 1860, P. L. 382, §13; 18 PS §231) defines the offense herein referred to as embracery as follows: "If any person shall attempt to corrupt or influence any juror in a criminal or civil court, or any arbitrator appointed according to law, by endeavoring, either in conversation or by written communication, or by persuasion, promises or entreaties, or by any other private means, to bias the mind or judgment of such juror or arbitrator, as to any cause pending in the court to which such juror has been summoned, or in which such arbitrator has been appointed or chosen, except by the strength of evidence or the arguments of himself or his counsel during the trial or hearing of the case, he shall be guilty of a misdemeanor."

The defendant had previously been charged in Berks County on a bill of indictment with aiding and abetting and being accessory to an embezzlement by a public

official. After the names of the potential jurors who were to serve at the court at which the defendant was to be tried had been dropped from the jury wheel in the office of the jury commissioners of Berks County and prior to the time that the sheriff of Berks County had served notice on all of the prospective jurors that they were called for duty, a list of such jurors had been obtained by the defendant. It was also proved that prior to the commission of the alleged offenses lists of such jurors who were to serve at the term when the defendant was called for trial had been published in two newspapers of general circulation in Berks County. The position of the appellant is thus stated: "A person is not a 'summoned juror' until the customary ticket has been delivered to the person or at least delivered to his place of abode by the sheriff or his duly authorized Deputy."

Attention is called by the defendant to the Act of April 14, 1834, P. L. 333, §125 (17 PS §1091), which makes it "the duty of the sheriff to summon, at least ten days before the return of the venire, the persons whose attendance shall be thereby required, by delivering to each of the said persons a separate ticket, in the customary form, specifying the duty enjoined, or by leaving such ticket at their usual places of abode, respectively."

A careful reading of the statutory definition will show that the gist of the offense is to "attempt to corrupt or influence *any* juror in a criminal or civil court, or any arbitrator." (Italics supplied). However, it would not be pertinent to a correction of the evil which the legislature sought to cure to include attempts to either influence or corrupt a person called as a juror as to a matter having no connection with his duties as a juror. Consequently it was provided that the act must concern a case pending in a court as to which the prospective juror might have a duty to perform.

By the Act of April 14, 1834, P. L. 333, §108 (17 PS §1031), the procedure is begun by the court's issuing a

writ of venire commanding the sheriff and jury commissioners to summon a jury. The names of the jurors are then drawn by lot from the jury wheel and they at once become prospective jurors for a given term. While §125 of the Act of 1834, referred to by appellant, provides how the sheriff shall give notice to the juror that he has been chosen, nevertheless the moment his name is dropped from the jury wheel the law "draws around him an invisible cordon, which no man may pass but at his peril," (Com. v. Kauffmann, 1 Phila. 534, 537) intended to remove him from all improper influences. The venire issued by the court is a summons and he becomes a juror the moment his name is dropped from the jury wheel. He is then a juror summoned, by authority of the court, for jury duty. It is true that the law provides a method by which the jurors are notified that they are chosen, but this is but a provision showing how the juror shall be notified, and at that not an exclusive method. It is directory, not mandatory. It has been customary throughout the state to convey this notice to the jurors in various ways, sometimes by lists published in the newspapers, again by informal notices from the sheriff by postal card with an attached return card for acceptance of service, or by the sheriff's calling personally upon the juror. When the juror's name is dropped from the wheel and he is thus chosen with others for jury service, he is a summoned juror as that term is used in the statute defining embracery. He has not been served as required by statute but he has been summoned.

An analogous situation was presented to the Supreme Court in the case of Com. v. Nye, 240 Pa. 359, 87 A. 585, where the defendant was convicted of murder in the first degree and the court overruled an assignment of error based on the trial court's refusal to quash the array of jurors because they had not been summoned by the sheriff or his deputy. There the court held that this section 125 was merely directory and they were

jurors competent to serve in a trial for murder, notwithstanding the fact that the summons had not been served upon them in compliance with statute.

(2) Appellant next argues that solicitation to commit a misdemeanor is not a crime by statute or common law in this Commonwealth and cites a single Pennsylvania case in support of the statement, *Smith v. Com.,* 54 Pa. 209. We do not so interpret that decision and do not believe that such is the law. The appellant, in his brief and argument, did not mention the case of *Com. v. Hutchinson,* 6 Pa. Superior Ct. 405, where this very subject had the careful consideration of this court and we came to a conclusion directly the opposite of that contended for by appellant. Likewise, the great weight of authority in other jurisdictions is against the appellant.

*Smith v. Com.,* supra, decided that it was not an indictable offense "to solicit, incite and endeavor to persuade a married woman to commit fornication or adultery." While reference was made to a distinction between a solicitation to commit a felony and a solicitation to commit a misdemeanor, the decision was not based upon that distinction but upon the nature of the offense of fornication and adultery. Mr. Justice AGNEW, that great master of the criminal law, dissented.

It is well settled in Pennsylvania that a solicitation to commit a felony is a common law offense: *Stabler v. Com.,* 95 Pa. 318, 322; *Com. v. Randolph,* 146 Pa. 83, 23 A. 388; but it does not follow that it is not a crime to solicit the commission of a misdemeanor regardless of its nature or gravity. In *Com. v. Hutchinson,* supra, we held that a solicitation to set fire to a store room, a misdemeanor, was indictable as a common law offense, that since the offense was one affecting the public society and public economy it was indictable though only a misdemeanor.

We there pointed out the artificial and arbitrary manner in which crimes have been classed as felonies

and misdemeanors and that such distinction in many cases formed no logical basis for the same contention as is made here.

There are few offenses that more directly affect the public economy and welfare than embracery. "Embracery is an offense striking at the very foundation of civil society": 20 C. J. 496. It is a grave and serious offense tending to undermine the very foundations of organized society and government of which the administration of law and justice is an essential part.

We again hold that a solicitation to commit a serious misdemeanor harmful to the public peace or the public welfare or economy is a common law offense in this state and that only such misdemeanors as by their nature make it unreasonable or illogical to treat them as a separate crime are excluded as an object of solicitation. In *Smith v. Com.*, supra, the Supreme Court gave a number of practical reasons for excluding a solicitation to commit adultery or fornication.

Our conclusions are supported by many cases in other jurisdictions, as a reference to 35 A. L. R. 961, where the cases are cited, will show. The matter is thus treated in Wharton's Criminal Law (12th Ed., §218): "Are solicitations to commit crime independently indictable? They certainly are, as has been seen, when they in themselves involve a breach of the public peace, as is the case with challenges to fight and seditious addresses. They are also indictable where their object is interference with public justice."

There is not any sound reason why solicitation to commit embracery should not be an indictable offense and there are strongly persuasive reasons for holding to the contrary. The law has always condemned any improper contacts with citizens called for jury duty, and if the evil is to be corrected the law should reach that interference at its earliest stage. It is reasonable to assume that when such nefarious conduct is practiced, the party primarily interested will act through

third parties. It would therefore seem wise to attack the evil at its very inception, that is, when the party to the litigation first seeks aid in his plan and solicits another to commit the offense.

(3) Finally, appellant contends that certain of the evidence which was admitted on the trial of this case was hearsay and as such should have been excluded. In bill No. 204, Wiswesser was charged with embracery and solicitation to commit embracery, the juror in question being Carrie Miller. D. J. Miller, her husband, testified as to conversations with Wiswesser in which Wiswesser asked Miller to talk to his wife about the case and promised she should have a new dress. Mrs. Miller was allowed to testify as to her conversation with her husband in which he told her of the conversation with Wiswesser. In bills No. 207 and 208, two different jurors were approached in the same manner through their husbands and the jurors were likewise allowed to testify. The testimony was competent, as we held in *Com. v. Fahey*, 113 Pa. Superior Ct. 598, 608, 173 A. 854, where Judge (now President Judge) KELLER said: "If one in attempting corruptly to influence a juror makes use of an agent to extend the promises or other means of influencing the juror, the acts of the agent done in attempted fulfillment of his instructions, and his conversations with the jurors pursuant thereto, are admissible in evidence against the principal. If an agent is employed or used to deliver a verbal message or to make oral promises to a juror, his conversations pursuant to such employment constitute the act he was engaged to perform, and evidence may be given of it, as of any other act done by the agent on behalf of the principal, and is not excluded under the hearsay rule. See 3 Wigmore on Evidence (2d Ed.), Sec. 1767, p. 775; Sec. 1768 (2), p. 776; Sec. 1769, p. 777; Underhill's Criminal Evidence, Sec. 718, pp. 961, 962."

Each indictment charged either embracery or solici-

tation or both. The defendant was found guilty on all indictments and on each count and was separately sentenced on each count to terms of either one year or six months, all sentences to run concurrently. Applying the law as we have stated it, there was evidence to sustain each count in the five indictments. We call attention to the fact that in at least two cases the juror concerned had actually been served by the sheriff with notice that he had been chosen as a juror before the offense was committed, the service in such case having been made by mail and acceptance in writing of the notice having been returned to the sheriff. Such a juror was certainly a summoned juror in any view of the case. In indictment No. 208 March Sessions, 1938, not only had the juror, Dorothy I. Schell, been actually summoned by the sheriff, but the defendant in this case was found guilty of embracery as well as solicitation. He was sentenced to a term of six months on the charge of solicitation and to one year on the charge of embracery. As the sentences on all indictments were concurrent and the sentence for embracery on this indictment covered the longest term given, the defendant would not, in any event, be called upon to serve any longer term than he should and no fines were imposed. *Cf. Com. v. Yerkes*, 86 Pa. Superior Ct. 5, 13. We have examined all the assignments of error and find no reversible error.

The judgment of the court below in each of the appeals is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentences, or any part or parts thereof which had not been performed at the time each appeal was made a supersedeas.