THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v. HAROLD COHEN, DEFENDANT-RESPONDENT.

Argued January 25, 1960—Decided March 7, 1960.

(1)

2

*Mr. Vincent P. Keuper,* Monmouth County Prosecutor, argued the cause for the plaintiff-appellant.

*Mr. Benjamin Edelstein* argued the cause for the defendant-respondent (*Messrs. Edelstein & Edelstein,* attorneys; *Mr. Benjamin Edelstein,* of counsel).

The opinion of the court was delivered by

BURLING, J. Defendant was indicted by the Monmouth County Grand Jury for misconduct in office committed while he was a police officer of the City of Asbury Park. Two indictments were returned against defendant, one charging him as the sole accused and the other charging him and another police officer as co-defendants. Motions to dismiss both indictments were filed by defendant and denied by the Monmouth County Court. The Superior Court, Appellate Division, upon granting an appeal from these orders, reversed the trial court and dismissed the indictments as to defendant. 56 *N. J. Super.* 509 (*App. Div.* 1959). The appellant requested this court to grant certification to review the dismissal insofar as it related to the indictment which charged

defendant alone, which petition was granted. 31 *N. J.* 80 (1959).

The indictment which is the subject of this appeal is in five counts. In each, the defendant is alleged to have been a duly appointed and authorized police officer of the City of Asbury Park at the time of the occurrences alleged. The first count charges that the defendant "did willfully and unlawfully and in violation of his duty as a police officer * * * evilly and corruptly inform, confess and say" to a named police officer that he, the defendant, had purchased a boat for $500 with money stolen from the city's parking meters, that he had stolen from the parking meters as much as $200 in a single day and on one occasion was in fear of being apprehended with that sum on his person, and that he had been able to accumulate $30,000. in money stolen from parking meters. The second count states that defendant "willfully and unlawfully and in violation of his duty as a police officer" attempted to take a set of keys for the parking meters from the desk of a city official, saying to another police officer who came upon him in this act that "if I can only find that City Manager's office open to get a set of those keys, I would be in." The third count charges that defendant "willfully and unlawfully and in violation of his duty as a police officer * *. * evilly and corruptly did solicit" a named special officer and parking meter collector to steal from the meters and to divide the booty with defendant. The fourth count repeats the portion of the third count quoted above, then charges defendant with attempting to persuade a named special officer and parking meter collector to steal from the meters and to place coin boxes from the meters in the automobile of unnamed police officers which would be driven past the collector while he was servicing the meters and, in exchange, the unnamed officers would cease following the meter collector while he made his rounds. The fifth count, after repeating the portion of the third count quoted above, charges that defendant suggested to a named parking meter repairman that he steal from the

collections of the meters and that, if he should do so, defendant knew a person who would convert the stolen coins into paper currency.

The trial court refused to dismiss any portion of the above indictment, but the Superior Court, Appellate Division, reversed this determination and ordered the entire indictment dismissed, holding that an indictment charging official misconduct must contain the duty or duties allegedly violated by the accused and that the indictment in question revealed "a patent failure * * * to allege the prescribed duties of defendant's office allegedly violated * * *." In addition to this issue, the defendant contends that the indictment fails to charge him with a crime. There are, therefore, two questions presented for our determination: first, whether an indictment for official misconduct must state the prescribed duties allegedly violated in greater detail than the instant indictment's charge that the acts complained of were done by defendant "in violation of his duty as a police officer"; and second, whether the indictment in any of its counts charges a crime against defendant.

The indictment states merely that the defendant violated his duty as a police officer by certain specified acts. Defendant asserts that this language fails to describe with sufficient particularity the prescribed duties the violation of which forms the basis of the crime charged against him. Frequently indictments for official misconduct set forth specific duties allegedly violated by the defendant. See, *e. g., State v. Castle,* 75 *N. J. L.* 187 (*Sup. Ct.* 1907). Defendant derives his argument that this practice is in conformance with a mandatory rule of law from *State v. Weleck,* 10 *N. J.* 355 (1952), where it was said that

"It is essential * * * that an indictment for misconduct in office allege both a prescribed duty of the office and facts constituting a breach thereof."

In that case, it was argued that an indictment for official misconduct was defective for failing to cite the source of

duties allegedly violated. After making the statement quoted above, the opinion states:

"The prescribed duties of an office are nothing more nor less than the duties cast by law on the incumbent of the office. Duties may be imposed by law on the holder of an office in several ways: (1) they may be prescribed by some special or private law, such as official action of a township committee * * * or a provision of a municipal charter * * * (2) they may be imposed by a general act of the Legislature * * * or (3) they may arise out of the very nature of the office itself * * *. In those instances where the duties are prescribed by some special or private law, the indictment must show the source of the duties, but where the duties are imposed by a general statute or arise out of the very nature of an office, the source of the duty need not be alleged in the indictment *for the courts will take judicial notice of such duties,* * * *." (Emphasis supplied) 10 *N. J.*, at *page* 366.

The defendant argues that the italicized phrase refers to the source of the prescribed duties, not the duties themselves, and hence is not inconsistent with his position. We believe, however, that the rationale of the rule stated above in *Weleck* applies to the duties as well as their sources and that the emphasized phrase in the above question from *Weleck* is an express recognition of this rule.

After making the statement that "an indictment for misconduct in office [must] allege both a prescribed duty of the office and facts constituting a breach thereof," the *Weleck* opinion states that "the defendant contends that the indictment here is deficient in both respects." Then the discussion continues with a consideration of the necessity that an indictment cite the source of the duty and concludes with the statement that "the courts will take judicial notice of such duties" where they arose out of the nature of the office or a general statute. There is no inconsistency in the *Weleck* case, and the reason for the apparent confusion between the duties and their sources is that, for purposes of allegation in an indictment for official misconduct, the duties and their source are considered as one, and there is no requirement that the allegedly violated duties of the office be expounded

in detail unless the source of the duties must be cited in the indictment. In *State v. Winne,* 12 *N. J.* 152, 179 (1953) a problem similar to that raised here was considered, concerning which it was said:

"The defendant argues that each count alleges merely naked conclusions of a vague and broad duty to use 'all proper, reasonable and effective means and all lawful means' to suppress a particular gambling house, as well as a vague and indefinite breach of duty in that the defendant 'unlawfully and wilfully did neglect and omit to perform the said public duties' and 'did neglect, fail and omit to use and exercise' all proper, reasonable, effective and diligent means for 'the detection, arrest, indictment and conviction' of those maintaining each such house. We have said that where the duty arose from some special or private law the indictment must reveal the source, but where the duty was imposed by a general statute or by the nature of the office it was unnecessary to set forth the source since the court will take judicial notice of the duties. *State v. Weleck, supra.* Each count uses the language of *R. S.* 2:182–5, *supra,* in charging defendant with the duty of 'detection, arrest, indictment and conviction' of violators of the gambling laws. When the defendant's duties as county prosecutor are prescribed by a general statute, it is unnecessary to plead the source of the duty for the courts will take judicial notice of them. *It is only when duties arise under a special or private law that they must be pleaded, State v. Weleck,* 10 *N. J.* 355 (1952), *supra."*

The reason for the rule is found in the requirement that the indictment charge a crime, *State v. Schmid,* 57 *N. J. L.* 625 (*Sup. Ct.* 1895), and where the duty rests in common law or on a general statute, a statement of facts constituting a breach of that duty is sufficient to make the offense judicially apparent, which is the fundamental purpose towards which the form of the indictment is directed. *Cf. State v. Lombardo,* 20 *N. J. Super.* 317, 324 (*App. Div.* 1952). Just as the source of the prescribed duty existing in the common law or general statute may be judicially noticed, so also may the duty arising from such sources be similarly noticed. And it is from the common law that we derive the primary duties attached to the position of a police officer. *State v. Donovan,* 132 *N. J. L.* 319 (*Sup. Ct.* 1945); *State v. McFeely,* 136 *N. J. L.* 102 (*Sup. Ct.* 1947).

As stated in *State v. Witte,* 13 *N. J.* 598, 608 (1953) "the specification of the accusation is sufficient if it afford the accused the means of preparing his defense and provide the basis for the plea of *autrefois convict* or *autrefois acquit,* in the event of a further prosecution for the same offense." And we have indicated above that judicial notice provides the means by which this court will ascertain the duties allegedly violated, to determine whether a crime' has been charged. No substantial purpose would be served, therefore, by requiring the indictment in question to set forth the prescribed duties of the office involved. For these reasons we sustain the form of indictment and turn to the question of whether the substance of the indictment charges a crime.

██ The first count must be dismissed on the ground urged by defendant, *i. e.,* for failing to charge a crime. In *State v. Weleck,* 10 *N. J.* 355, 365 (1952), this court quoted with approval the following definition from 1 *Burdick, Law of Crime* § 272, *p.* 388 (1946):

"Misconduct in office, or 'official misconduct,' means * * * any unlawful behavior in relation to official duties by an officer intrusted in any way with the administration of law and justice, or, as otherwise defined, any act or omission in breach of a duty of public concern, by one who has accepted public office."

The first count merely charges that the defendant, while conversing with another officer, declared that he had stolen money from the city's parking meter receipts. The conversation was not charged as being part of a conspiracy or a solicitation in furtherance of an attempted bribery or other illegal purpose. From all that can be gathered from the indictment, the defendant is being accused merely of making the statement. If the crime indicated by the substance of the conversation were being charged, such an indictment could no doubt be sustained. But in its present form the indictment does not accuse defendant of any breach of a duty owed by a police officer by virtue of his public status or of any other crime. Consequently the first count must be dismissed.

■ The second count also must fall. In it defendant is charged with attempting to obtain from the office of a city official the keys which operate the parking meter coin boxes. The count specifies that defendant was discovered "in the main office of the City Hall of the City of Asbury Park, just outside the office door of" a city official in whose office the keys in question were kept, and that upon being discovered defendant stated that "if I can only find that City Manager's office open to get a set of those keys, I would be in." Defendant is not accused of acts carried out to allow him to gain entrance to the keys' storage place. The count is conspicuously silent in this detail. Nor does it appear that the place where defendant was discovered was not a proper place for him to be. All that remains is an expressed desire on defendant's part to remove the keys in order to steal money. Without more, such an intent is insufficient to constitute a crime.

■ The third, fourth and fifth counts, however, are sustained. As in the case of the first and second counts, defendant argues that the last three counts of the indictment fail to charge the crime of misconduct in office and that at most they indicate that private misconduct has occurred but fail to accuse him of any of the specific crimes possibly involved. We disagree with this conclusion, however, and hold that the third, fourth and fifth counts do charge the defendant with the crime of misconduct in office.

A police officer has the recognized duty to use all reasonable means to enforce the laws applicable in his jurisdiction, and to apprehend violators. *State v. McFeely,* 136 *N. J. L.* 102 *(Sup. Ct.* 1947); *Henderson v. State,* 7 *N. J. Misc.* 520 *(Sup. Ct.* 1929). It would seem to be only another manifestation of the principle behind this duty to state that it is incumbent on police officers not to solicit, in furtherance of an evil or corrupt motive, others to commit crimes. In the third and fourth counts, the defendant is charged with soliciting parking meter collectors to steal meter receipts and to share the proceeds with defendant. The fifth count

charges defendant with encouraging a parking meter repairman to steal meter receipts for his own benefit. A police officer must not himself violate the laws he is sworn to enforce applicable in his jurisdiction, *cf. McCain v. Sheridan,* 160 *Cal. App. 2d* 174, 324 *P. 2d* 923, 926 (*Dist. Ct. App.* 1958), and such an officer is criminally responsible under a charge of misconduct in office when either he himself commits, or he solicits others to commit, the crimes which defendant attempted to persuade the meter collectors and repairman to execute. Such acts, carried to a conclusion, would be criminal *per se,* and we perceive a clear duty incumbent on a police officer not to act in such a manner. Consequently we sustain the last three counts of the indictment in question.

For the foregoing reasons we sustain the form of the indictment charging defendant with misconduct in office and the third, fourth and fifth counts thereof. We dismiss, however, the first and second counts of that indictment, but we might add there is ample time (*N. J. S. 2A*:159–3) remaining to re-present the subject matter of the dismissed counts to the Grand Jury for consideration as to whether a substantive crime was committed.

The judgment of the Superior Court, Appellate Division, is reversed, and the indictment, as modified, is returned to the trial court for further proceedings.

WEINTRAUB, C. J. (concurring). In *State v. Weleck,* 10 *N. J.* 355, 365 (1952), the court quoted with approval the following definition from 1 *Burdick, Law of Crime* (1946), § 272, *pp.* 387–88:

"By 'misconduct in office,' or 'official misconduct,' is not meant misconduct, criminal or otherwise, which is committed by a person who happens to be a public officer, but which is not connected with his official duties. Such conduct is sometimes called private misconduct to distinguish it from official misconduct. * * *

Misconduct in office, or 'official misconduct,' means, therefore, any unlawful behavior in relation to official duties by an officer intrusted in any way with the administration of law and justice, or, as otherwise defined, any act or omission in breach of a duty of public concern, by one who has accepted public office."

At the cited reference *Burdick* illustrates the difference between private and official misconduct in this way:

"A public official may, for instance, become voluntarily drunk without its interfering in any way with his official duties, and in such a case he may not be guilty of 'official misconduct.' Should his drunkenness, however, cause him to neglect his duties, or incapacitate him from performing them, he would be clearly guilty of official misconduct."

With the above, I have no quarrel. However, *Weleck* went on to say (10 *N. J.,* at *page* 369):

"* * * If a public officer were under no duty imposed by law to regulate his official conduct in accordance with basic moral principles, then he could violate such principles and still be immune from indictment and prosecution for misconduct in office. We recognize no such divorce of morals from the duties of public office."

This constitutes an innovation in the criminal law for which I can find no support if it means that an indictment will lie for "immoral" behavior even though it does not constitute the failure to perform or the improper performance of a specific duty of office. The prosecutor apparently so reads *Weleck* and seeks to sustain the indictment upon that thesis.

Needless to say, I do not admire immorality. But the equation of immorality with criminality is something else. Men may not agree upon what is immoral. More than that, opinions may divide upon what immorality is worthy of the heavy hand of criminal liability. The State wisely leaves much to the sanction of private contempt and censure. Few of the Ten Commandments found their way into criminal law. I could not agree that a public officer is guilty of crime in office if he fails to honor his mother or father, or takes the name of God in vain, or covets the house, wife, or anything else that is his neighbor's, or labors on the Sabbath as some judges find they must. The question whether immorality shall be denounced as criminal falls solely within the province of the Legislature, the spokesman of the social conscience. Criminal law is no place for judicial ingenuity and invention. And if the Legislature declared it criminal

for a public officer to do or say anything "immoral" the statute would hold a tyranny of vagueness which the Constitutions of the State and Nation forbid. I think it equally clear that the Judiciary cannot uphold a common-law crime, if one can be found, which thus depends upon the taste of the individual judge or juror.

The first count of the indictment charges defendant did "evilly and corruptly inform, confess and say" to another police officer that he had stolen $30,000 from parking meters. This count could not be sustained if it were read to charge that defendant committed a fresh crime by the act of confessing his guilt of another offense. With this the prosecutor agrees. If this count charges a *false* confession, it would raise the question whether it is a false official report and could be deemed a criminal breach of official duty. But the prosecutor disclaims that theme, for he does not intend to prove the "confession" was untrue. Thus the thesis becomes that it is poor behavior for a policeman to tell a brother officer that he has been guilty of crime, whether the tale be true or false. That such behavior in one aspect or another is unworthy of a policeman, I do not doubt, and he may well be removed from office. See *In re Cohen*, 56 *N. J. Super.* 502 (*App. Div.* 1959), certif. denied 31 *N. J.* 297 (1960). But I join the majority in its conclusion that a "confession" does not constitute a failure to perform or improper performance of a duty of the office of policeman.

The second count is of the same stamp. It alleges defendant "did attempt to get and obtain possession of a set of keys for the parking meters from the office of the City Manager," saying to another policeman that "If I can only find that City Manager's office open to get a set of those keys, I would be in," meaning, as the indictment says, that he could then have easy access to parking meters and purloin their contents. The prosecutor does not seek to sustain this count as a charge of attempted larceny. Rather he advances the thesis that the declaration of an evil purpose is despicable in a policeman and, under the interpretation of *Weleck* to

which I alluded above, is immoral behavior punishable criminally. Again, removal from office is quite appropriate, but I agree with the majority that the allegations do not constitute nonfeasance, misfeasance or malfeasance of a specific duty of office.

The majority find the remaining three counts do charge the crime of "misconduct in office." These counts allege that in violation of his duty as a police officer defendant evilly and corruptly solicited other named persons, two described as special officers and meter collectors and the third as a meter repairman, to steal moneys from parking meters.

The common-law offenses of nonfeasance, misfeasance and malfeasance relate to the discharge of the specific duties attached to a public office. A duty of office, within the scope of those offenses, is not some general obligation of proper decorum. For example, a policeman must obey departmental rules and regulations of that character but I take it that he would not be indictable for crime if he smoked a cigarette or failed to button his coat. Rather, the duty to which these common-law crimes pertain is that duty, affirmative in nature, for the performance of which the public office was created. In the case of a policeman, the duty for the performance of which his office was constituted is the enforcement of the penal laws, including prevention of violations and the detection and arrest of offenders. He is indictable for nonfeasance, misfeasance or malfeasance only if, with the requisite criminal mind, he fails to perform or improperly performs that public duty.

All persons have the "duty" to obey the law. More accurately, there is no "duty" but rather a liability to punishment. Every public officer of course is thus amenable in his capacity of private citizen, but he does not necessarily commit two crimes by a single act merely because he happens also to be a public official.

What then is the liability of a policeman if he himself violates the law? If his act would be a crime when committed by another, he of course is indictable as a private citizen. If his act, thus criminal when committed by a

private citizen, does relate to the performance of his duty of office, as, for example, if a policeman detailed to coin collection should pilfer those very moneys while performing his official role, he would be guilty at least of nonfeasance with respect to his specific duty to collect and turn them in. There may be other situations in which the commission of a non-official crime simultaneously involves a criminal dereliction with respect to the performance of an affirmative duty of office. That question is likely to remain largely academic, for plainly it is more sensible to indict for the basic offense than to follow the tortuous path of nonfeasance, misfeasance or malfeasance in office. It would be pointless for a prosecutor to assume the added burden of proving a connection with official duty, unless his purpose should be to seek multiple punishment for a single act, an objective which would invite attention to the guarantees with respect to double jeopardy and due process of law.

But I cannot agree that a policeman is guilty of the common-law crime by reason of his every infraction of the penal laws. A police officer is not appointed to prevent *himself* from committing offenses, nor to detect and arrest *himself*. Rather his *official* role is so to deal with others. It is much too attenuated and unrealistic a thought that a man be his own policeman. In my view, the common sense of the situation makes this evident. It would be startling to indict for crime a police officer who exceeds the speed limit or parks too close to a hydrant. It would be absurd to find him guilty of still a second crime for failing to detect himself, *i. e.*, to give himself a ticket and to make a full report, *i. e.*, a confession of his traffic offense, or perhaps of still a third crime, for his failure to charge himself with nonfeasance in failing to report that he had failed to confess his motor vehicle violation. I do not see how a line could be drawn short of such absurdities if it were held that a policeman has the *public duty* to prevent himself from violating the law and to detect his own infractions.

Neither counsel nor any member of the court has uncovered a precedent to support an indictment at common

law upon the thesis discussed above. That circumstance suggests caution. As I have said, the creation of criminal liability is singularly a legislative function. The Legislature has not denounced such conduct as an official crime. We are asked to find that it was so regarded at common law and so remains under the catch-all provision of *N. J. S.* 2A:85-1 which constitutes as a misdemeanor an offense "of an indictable nature at common law, and not otherwise expressly provided for by statute." We should not sustain an indictment thereunder unless we are thoroughly satisfied that criminal liability existed at common law. Especially is that true in the situation before us, in which the full reach of the concept can scarcely be foreseen and in which the public interest is amply protected by prosecution of the officer as a private offender.

The majority opinion, as I read it, holds that even less than what I have discussed above suffices for criminal liability. I say this because the opinion does not find that the solicitation would itself be a crime if made by a private citizen. The theory appears to be that a policeman, being charged with enforcement of law, violates that duty if he solicits a criminal violation (and this without regard to even a connection with the performance of the officer's specific detail or beat). If the thesis is good, the same liability for official crime should exist if the policeman solicits a disorderly person's offense, or traffic violation, or an infraction of a local ordinance. It should be clearly understood that we are not discussing the liability of a policeman as an aider and abettor, for in the present case the offense solicited was not committed by the party solicited. No authority supports criminal liability for *misconduct in office* in these circumstances. If the public interest requires criminal sanctions, we should leave the matter to the Legislature which could define and limit the offense within the range of reasonableness.

Although I am satisfied the last three counts do not charge the *official* crime of nonfeasance, misfeasance or malfeasance

of an affirmative duty of office, I am equally satisfied each does charge a crime, to wit, the common-law crime of solicitation, in violation of the same catch-all phrase of *N. J. S.* *2A*:85–1 quoted above. Each alleges the essential facts constituting solicitation to commit larceny. I would uphold these counts on that basis and treat the irrelevant allegation of defendant's official status as surplusage.

The authorities are substantially agreed that solicitation to commit a felony was indictable at common law. See *State v. Blechman,* 135 *N. J. L.* 99, 101 (*Sup. Ct.* 1946); *State v. Quinlan,* 86 *N. J. L.* 120, 125 (*Sup. Ct.* 1914), affirmed on opinion below 87 *N. J. L.* 333 (*E. & A.* 1915); *State v. Boyd,* 86 *N. J. L.* 75, 79 (*Sup. Ct.* 1914), affirmed on opinion below 87 *N. J. L.* 328 (*E. & A.* 1915); *Rex v. Higgins,* 2 *East.* 5, 102 *Eng. Rep.* 269 (*K. B.* 1801); *State v. Beckwith,* 135 *Me.* 423, 198 *A.* 739 (*Sup. Jud. Ct.* 1938); *Commonwealth v. Wiswesser,* 134 *Pa. Super.* 488, 3 *A. 2d* 983 (*Super. Ct.* 1939); *State v. Schleifer,* 99 *Conn.* 432, 121 *A.* 805, 35 *A. L. R.* 952 (*Sup. Ct. Err.* 1923); *annotation,* 35 *A. L. R.* (1925) 961, 963; 1 *Burdick, Law of Crime* (1946), § 104, *pp.* 115–117; 1 *Wharton's Criminal Law* (*12th ed.* 1932), § 218, *p.* 288; 22 *C. J. S. Criminal Law* § 78, *p.* 142. What solicitations, other than for the commission of a common-law felony, are thus indictable need not be considered since larceny, the offense here alleged to have been solicited, was a felony at common law. *State v. Hauptmann,* 115 *N. J. L.* 412, 424 (*E. & A.* 1935), *cert.* denied, 296 *U. S.* 649, 56 *S. Ct.* 310, 80 *L. Ed.* 461 (1935); 32 *Am. Jur., Larceny,* § 2, *p.* 882.

Upon that basis, I would sustain the last three counts and thus concur in the result reached by the majority.

WEINTRAUB, C. J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.