203 N.J. Super. 59 (1984)
495 A.2d 910
STATE OF NEW JERSEY, PLAINTIFF,
v.
GARY STEVENS, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
April 25, 1984.
*62 Paul Latterman for plaintiff (Stephen G. Raymond, Burlington County Prosecutor, attorney).
John E. Wherry, Jr. for defendant (Wherry and Yostembski, attorneys).
HAINES, A.J.S.C.
Gary Stevens has been indicted for official misconduct. He is charged with conducting an unjustified strip search. He moves to dismiss the indictment, claiming it does not set forth the source or nature of any duty of his office which was violated and therefore does not charge a crime.
The indictment states that:
Gary Stevens did, while a police officer for Westampton Township, New Jersey, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit, did [sic] commit acts relating to his office but constituting an unauthorized exercise of his official function, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; *63 VIZ. In that he did have Jane A. Petroski undress in his presence, at the Westampton Township Police Station, under circumstances not appearing to present either danger or emergency to him or to herself; and did have her undress under circumstances not appearing to have any justifiable basis, in view of the reasons for her detention.
Contrary to the provisions of N.J.S.2C:30-2a, and against the peace of this State, the Government and dignity of the same.
N.J.S.A. 2C:30-2 provides:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
(a) He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
(b) He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
The indictment refers only to 2C:30-2(a); it does not mention 2(b).

I

Drafting Rules
R. 3:7-3(a) provides:
The indictment or accusation shall be a written statement of the essential facts constituting the crime charged, need not contain a formal commencement and shall be signed by the prosecuting attorney.
"The purpose of the indictment is to inform the accused of the nature of the offense charged so as to enable him to make an adequate defense as well as to avail himself of his conviction or acquittal to avoid the threat of double jeopardy. The indictment also serves to inform the court of the facts alleged so that it may decide whether they are sufficient in law to support a conviction if one should be obtained." State v. Winne, 12 N.J. 152, 178 (1953).
In the present case, Stevens is charged, in the language of N.J.S.A. 2C:30-2, with purposely committing an unauthorized act relating to his office. The rule with reference to the use of statutory language is set forth in State v. McGovern, 136 N.J.L. 115 (Sup.Ct. 1947):
Where the words of the statute are descriptive of the offense, it is ordinarily sufficient to charge the offense in the language of the statute or in words of *64 similar import, subject to qualification that the crime must be set forth with clearness and necessary certainty to apprise the party accused of the offense with which he stands charged. [at 117-118]
In State v. Morano, 134 N.J.L. 295 (Sup.Ct. 1946) the court said:
An offense may be charged in the words of a statute if the statute describes it in terms that in themselves import with certainty the elements of the offense, and the statutory language need be supplemented only when necessary to particularize and identify the offense that would otherwise be indefinite and uncertain because of the generality of the statutory language. [at 296]
See also State v. Gibbs, 134 N.J.L. 366, 369 (1946). In State v. Williamson, 31 N.J. 16 (1958), Chief Justice Weintraub, writing a concurring opinion, said:
... There is no such offense as official misconduct in general any more than there is a crime of larceny in general. Both are crimes with relation to specific situations. An indictment for larceny must identify the specific event. So also must an indictment for misconduct in office. [at 19]
The position of defendant is that the indictment does not meet the test of the rule or the cases. He contends that he is not provided with notice of the crime with which he is charged because the indictment does not set forth the source and nature of any duty he has breached. He also argues that the actions set forth in the indictment were not proscribed by any duty imposed upon him. The allegation of source and duty is not always necessary. In State v. Weleck, 10 N.J. 355 (1952), which dealt with misconduct in office of a municipal attorney, the court said:
In those instances where the duties are prescribed by some special or private law, the indictment must show the source of the duties, but where the duties are imposed by a general statute or arise out of the very nature of the office, the source of the duty need not be alleged in the indictment for the courts to take judicial notice of such duties.... [at 366]
Duties arising "out of the very nature of the office," i.e., inherent duties, usually are derived from the common law. In State v. Cohen, 32 N.J. 1 (1960), the court addressed an indictment charging a policeman with misconduct in office. It held:
... [F]or purposes of allegation in an indictment for official misconduct, the duties and their source are considered as one, and there is no requirement that the allegedly violated duties of the office be expounded in detail unless the source of the duties must be cited in the indictment.

*65 ....
Just at the source of the prescribed duty existing in the common law or general statute may be judicially noticed, so also may the duty arising from such sources be similarly noticed. And it is from the common law that we derive the primary duties attached to the position of a police officer. [at 6-7]
In State v. Winne, supra, the Court said: "It is only when duties arise under a special or private law that they must be pleaded." 12 N.J. at 179. No special or private law prescribed Stevens' duties. They are inherent duties of his office which may be judicially noticed.

II

The Duties of a Policeman
Every police officer has an inherent duty to obey the law and to enforce it. That duty is essential to the preservation of a free society. Its absence makes the law enforcer lawless, permitting violence, oppression and injustice. Thus, in State v. Cohen, supra, the court said:
A police officer has the recognized duty to use all reasonable means to enforce the laws applicable to his jurisdiction, and to apprehend violators.... A police officer may not himself violate the laws he is sworn to enforce applicable in his jurisdiction . .., and such officer is criminally responsible under a charge of misconduct in office when either he himself commits, or he solicits others to commit, the crimes which defendant attempted to persuade the meter collectors and repairman to execute. Such acts, carried to a conclusion, would be criminal per se, and we perceive a clear duty incumbent upon a police officer not to act in such a manner. [32 N.J. at 9-10]
Numerous cases have described the inherent duties of policemen and other public officials in very broad terms. In State v. Donovan, 132 N.J.L. 319 (Sup.Ct. 1945), several police officers were indicted for failing to prosecute certain criminal offenses. The court said:
One of the fundamental duties of a police department, from Chief of Police to patrolman, is to be on the lookout for infractions of the law and to use due diligence in discovering and reporting them, and in the proper case, arresting the perpetrator and lodging and prosecuting a proper complaint. [at 321]
Driscoll v. Burlington Bristol Bridge Co. Inc., 8 N.J. 433 (1952), held that public officers have a duty "to serve the public with the highest fidelity ... to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, ... to *66 display good faith, honesty and integrity, ... to be impervious to corrupting influences...." Id. at 474-476. In State v. Weleck, supra, defendant was charged with violation of a duty "to render legal services to said Borough to the best of his ability and uninfluenced by motives adverse to the best interests of said Borough." 10 N.J. at 367. The Court found that this language described an inherent duty of Weleck's office as a municipal attorney. In State v. Begyn, 34 N.J. 35 (1961) the court said:
The indictment quite properly in substance alleged the duty of any official to be to perform the tasks assigned to him uninfluenced by adverse motives engendered by requesting or accepting any gift, gratuity or promise under an agreement either evilly not to do some of the very functions of his position at all or to do them in a manner contrary to the public interest. Such a duty is an inherent and fundamental one, specifically related to the particular office and founded on something more than a mere moral concept. [at 51]
The Begyn court considered an apt definition of misconduct in office to be: "[C]orrupt behavior by an officer in the exercise of the duties of his office, or while acting under color of his office." Id. at 49. It noted that "[d]efinitions of misconduct in office are necessarily broad." Ibid.
All of these broadly described inherent duties are included in the duty of a police officer to obey and enforce the law. That duty requires service to the public of the highest fidelity, a refusal to be influenced by corrupting motives, as well as honesty, integrity and good faith. It is a duty which need not be set forth in the indictment because it may be supplied by judicial notice. Consequently, if the actions set forth in Stevens' indictment constitute a breach of that duty, whether broadly or narrowly described, the indictment is sufficient. Quite clearly, it is. The actions charged are violations of constitutional law.

III

The Constitutional Duty
A strip search, whenever and however made, is a gross violation of privacy. It is to be condoned only in the *67 presence of special circumstances. Absent these, the procedure constitutes a flagrant violation of personal rights protected by the state and federal constitutions. The provisions of these constitutions are laws which must be obeyed and enforced by policemen. When they are not, that failure is the breach of a duty imposed upon all public officials.
The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.
Art. 1, par. 7 of the New Jersey Constitution contains a like provision. In Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d, 660 (1979), the United States Supreme Court, in considering whether a particular act constituted an "unreasonable search," said:
[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests ... The reasonableness standard usually requires, at a minimum, that facts upon which an intrusion is based be capable of measurement against an "objective standard", whether this be probable cause or a less stringent test. [440 U.S. at 654, 99 S.Ct. at 1396, 59 L.Ed.2d at 667-668]
A strip search may be permitted under this rule. Law enforcement personnel have a legitimate interest in discovering weapons or contraband secreted upon the person of one who has been detained. That interest may not be pursued through a body search, however, unless there is probable cause to believe that weapons or contraband are present. This requirement is set forth in a number of federal strip search cases, most of which involve suits for damages against offending officers. Salinas v. Breier, 695 F.2d 1073 (7 Cir.1982); Logan v. Shealy, 660 F.2d 1007 (4 Cir.1981); Smith v. Jordan, 527 F. Supp. 167 (S.D.Ohio W.D. 1981); Bono v. Saxbe, 527 F. Supp. 1182 (S.D.Ill. 1980); Tinetti v. Wittke, 479 F. Supp. 486 (E.D.Wis. 1979), aff'd 620 F.2d 160 (7 Cir.1980). Tinetti sums up the law:

*68 The undisputed facts show that the plaintiff was strip searched as a part of a routine, long-standing policy of defendants, without consideration as to whether probable cause existed to believe that she was concealing weapons or contraband. While law enforcement personnel do have a legitimate interest in discovering weapons or contraband, that interest cannot be indiscriminately satisfied by the strip searching of non-misdemeanor traffic violators where there is no reason to believe that the violators have concealed any such articles. The intrusion on one's personal dignity occasioned by such searches requires that some justifiable basis exist. [479 F. Supp. at 490]
A search and seizure which violates constitutional restrictions may not, standing alone, be a criminal act. It is clear, however, that a charge of misconduct in office may be sustained without proof of a criminal act. As early as 1877, in State v. Startup, 39 N.J.L. 423, 426 (Sup.Ct. 1877), it was held that an act forbidden by statute which was not necessarily criminal could nevertheless constitute an indictable breach of a public duty. In State v. Gleitsmann, 62 N.J. Super. 15 (App. Div. 1960), a police officer was charged with the personal use of a municipal telephone and police car. The court, responding to a claim that no crime was charged, held that the improper action of the officer, if willful, could nevertheless constitute the common law crime of misconduct in office.

IV

Conclusion
The motion to dismiss the indictment must be denied. The court takes judicial notice of the duty of defendant to obey and enforce the law. The significant law which he was required to obey and enforce is set forth in the search and seizure provision of our constitutions, both state and federal. N.J.S.A.2C:30-2 makes an unlawful search and seizure, knowingly and purposefully made by a police officer for his benefit, a crime, namely, misconduct in office. The indictment clearly sets forth actions which constitute an unlawful search and seizure undertaken for the implied benefit of defendant  the satisfaction of his prurient interests. It, therefore, charges him *69 with the crime of misconduct in office and provides him with adequate information upon which to base his defense.